Ruffin, C. J.
 

 In Equity, it has always been held, that there should be relief between co-sureties, upon the principle of equality applicable to a common risk ; and upon the insolvency of one, the loss has been divided between the others, as being necessary to an equality. The Court of Equity, from its modes of proceeding and having- all the parties before it at once, is able to adjust their rights upon this principle in every case, however complicated by the number of the sureties, or by successive insolvencies. In a single suit every thing may be fully investigated — the property of the principal first applied — full or partial indemnities to some of the sureties enquired into and required — and the insolvency of some of the sureties ascertained ; and, indeed, the loss of each ascertained, and the proper contribution from each finally and conclusively determined. In many instances, a court of law is incompetent to administer the justice, to which sureties may be entitled as against each other. For that reason, it was formerly held in this State, that the ground of relief in the courts of equity was a pure equity, and not the notion of mutual promises between the co-sure
 
 *85
 
 ties ; and therefore that, at common law, no action would lie for one against another, even where there were but two sureties.
 
 Carrington
 
 v
 
 Carson,
 
 Conf. Rep. 216. It is true, that about the same time in 1800, it'was held otherwise in England; and an action at law was sustained for one surety, who paid the debt, against another for contribution.
 
 Cowel
 
 v
 
 Edwards,
 
 2 Bos. & Pul. 268. But it was there found necessary to restrict the action to the simple cases, where there were but two sureties, or, if there were more than two, to a recovery against each of an aliquot proportion of the money, ascertained by the number of the sureties merely. It was found impossible to carry the doctrine further at law; because courts of law proceed only on contracts, and could hot imply, that there was more than the one contract between the sureties, at first entered into, and suppose, contrary to the fact, new ones to spring up with every change of the circumstances of the sureties that might happen, even after the payment of the money by one of them. As far as an aliquot proportion, according to numbers, the money might be presumed to have been paid to the uses of the sureties severally. But on the insolvency of one of them afterwards, the share of the insolvent could not be made then to change its character, and become money paid to the use or at the request of those who were solvent. The law could not, in such complicated cases, do complete justice by one final determination ; and therefore it did not undertake it. And such is still the rule in England.
 
 Browne
 
 v
 
 Lee,
 
 6 Barn. & Cres. 689.
 

 In this State, however, the doctrine has been the subject of legislation, in the act of 1807, Rev. Stat. c. 118, s. 2; and it is to be considered how far that has altered the law, as it previously existed here. It provides that when the principal is insolvent, one surety, who has paid the debt, may have his action on the case against another, “ for a just and rateable proportion of the sum,’” The purpose of the act was, probably, nothing more than to say, that the rule laid down in
 
 Carrington
 
 v
 
 Carson,
 
 that there was no jurisdiction at law in any case, should be law no longer; leaving
 
 *86
 
 the question to the courts, what in each case was the
 
 “
 
 just anc^ rateable proportion,” to which, as far as a court of law was competent to ascertain, the party was entitled. It is not unjiice]yj that a knowledge of tire case of
 
 Cowel
 
 v
 
 Edwards,
 
 about that time acquired, might have induced the enactment, and that it was intended to transfer its principle and nothing more into the act. At all events, it furnishes no data for determining the proportion, but the number of the sureties; and thus it adopts the rule of that case. The words are, " where there are
 
 two
 
 or
 
 more,
 
 sureties, and one may have been compelled to satisfy the contract, he may have his action against the other surety or sureties for a just and rateable proportion of the sum.” The proportion here spoken of, is that which arises among the parties to the contracts specified in the first part of the sentence; which are, first, a contract in which there are two sureties, and, secondly, a contract in which there are more than two.
 

 In each of those cases, the sureties are to be respectively liable for a rateable proposition ; namely, where there are two sureties, for a moiety, and where there are more than two, in a like proportion, that is, according to their number. This construction is rendered the clearer, when attention is drawn to the particular case in which the action is given. It is not in every case, in which a surety makes the payment, but only in that of the insolvency of the principal, or, what is tantamount, his residence out oí the state. Those and those alone are the cases within the. purview of the act; and upon the supposition of that state of facts, an aliquot part according to numbers, is not only a rateable, but the only just proportion of each surety. Withouttheinsolvencyofasuretyalso, his share cannot in any Court be imposed on the others. But the act takes no notice, that one or more oí the sureties may be insolvent or reside abroad, nor gives an action for rights arising out of that state of things. It is apparent that case was not contemplated by the Legislature ; and therefore no rate of contribution between the sureties, as affected by the insolvency of one or more of their own body, or, indeed, by any thing else but the insolvency of the principal, was thought
 
 *87
 
 of, or is provided for in the act. The object was merely to change the form in the single instance of payment by a sure-' ty, who was unable to obtain re-imbursement from the principal; and every thing else was left as before.
 

 It follows, that each surety is liable at law for only hisloriginal aliquot part; and, of course, an action cannot be brought against two or more jointly, but each must be sued -separately for his own liability. Indeed there is-another consideration, which renders it perfectly clear, that a joint action cannot be maintained; which is, that the plaintiff might thereon raise the whole recovery from one of the defendants, in the first instance, although the other might be solvent — which is wholly inadmissible. Moreover, it would change the ratio of liability, even in case of the insolvency of one. For suppose three sureties A. B. and C. for a debt of $300; and that A. pays it and then sues the other two for $200. If B. then become insolvent and C. pay the judgment, he would then pay more than his proportion, and have a just claim on A. — to return to him $50 to equalize their loss. But it is an absurdity, that one should recover in one action, what the defendant may have a right to recover back in another action-; which shews that no action can be allowed, in which the recovery will not be confined to the sum for which the defendant is liable at all events.
 

 Beyond such a liability, justice can be done between-persons in this relation only in the Court of Equity.
 

 Per Curiam, Judgment affirmed»