S. R. FOWLE v. A. D. McLEAN, TRUSTEE, ET AL.

(Filed 7 April, 1915.)

### 1. Estates—Timber Deeds—Defeasance—Judgment Liens.

Timber growing upon lands is regarded as realty, and a deed thereto giving power to cut and remove the same within a stated period creates an estate therein defeasible as to all timber not cut and appropriated within the time allowed; and while such estate exists it is subject to a lien of a docketed judgment against the grantee of the timber and to the ordinary methods of enforcing collection of the same.

### 2. Judgments—Presumptions—Mortgages—Interpretation of Statutes.

Revisal, secs. 574, 575, providing that all judgments entered during the term of court shall relate to the beginning of the term, and be deemed to have been then entered, will not apply where it will affect the rights of innocent *bona fide* purchasers for value under a conveyance of lands, and registered during the term of court at which the judgment had been obtained.

### 3. Mortgages—Purchasers for Value—Pre-existing Debt.

The principles that a mortgage given for a present loan of money constitutes the mortgagee a purchaser for value generally obtains in reference to mortgages and deeds of trust to secure past indebtedness. Revisal, secs. 961-964.

### 4. Same—Principal and Surety—Equity—Subrogation.

Judgment having been rendered against the principal on a note and H., one of his sureties, H. and K. mortgaged their interest in certain standing timber, and thereafter judgment was rendered against K. and M., sureties on the same note; the mortgage of H. and K. was registered at the same term of the court at which the second judgment was rendered, but prior in point of time. M. paid the judgment creditor and had the judgment assigned to a third person to his use. The plaintiff was the purchaser at the sale under the mortgage. *Held*, M., the surety who had paid the judgment, is subrogated to the rights of the judgment creditor, and holds a lien prior to that of the mortgage on the interest of H. in the timber, but not on that of K., for as to K. the mortgage is regarded as having been registered before the rendition of the judgment.

### 5. Principal and Surety—Judgments—Payment—Assignment of Judgment— Uses and Trusts.

A surety may preserve the lien of judgment against the principal and himself by paying the judgment creditor and having the judgment assigned to a third person for his own benefit; and this also applies to a judgment against his cosureties and himself in enforcing an equality of obligation between them.

### 6. Principal and Surety—Contribution—Insolvency—Jurisdiction—Property.

The liability of sureties among themselves is controlled by the equitable principle of equality arising out of a common risk, and in case of insolvency or nonresidence these rights are adjusted by reference to the number of sureties who are solvent or who have property available to process within the jurisdiction of the court.

**7. Appeal, and Error—Modified Judgment—Costs.**

It appearing on this appeal that the lower court erred only in part in applying the equitable doctrine of subrogation to the facts set out, the costs thereon are equally divided between the parties.

APPEAL by defendant from *Bond, J.,* 28 January, 1915, at chambers; from BEAUFORT.

Civil action heard on return to restraining order, by consent, and upon case agreed. The facts agreed upon are as follows:

"This cause coming on to be heard before the undersigned judge on the return to an injunction heretofore issued, the following facts are, by consent, found, and are agreed upon by the parties hereto as the facts in the case:

"(1) It is found as a fact that on 11 November, 1911, summons was issued in favor of McKeel-Richardson Hardware Company against Washington Lumber Company, W. F. Harrell, L. I. Moore, and J. R. Kessenger, and that service of summons was made on Washington Lumber Company and on W. F. Harrell on 13 November, 1911, and on the defendant L. I. Moore on 11 November, 1911, and on J. R. Kessenger 29 November, 1911.

"It is further found as a fact that a duly verified complaint was filed in the office of the clerk of the Superior Court of Beaufort County on 22 November, 1911, and that judgment by default final was taken against the Washington Lumber Company and W. F. Harrell at the December (1911) term of the Superior Court of Beaufort County on the relief demanded in the complaint.

"It is further found as a fact that judgment by default final was taken against defendants Moore and Kessenger on 12 June, 1912, and was docketed and indexed in the office of the clerk of the Superior Court of Beaufort County on said date.

"It is agreed between the parties to this controversy that the complaint in the suit of *McKeel-Richardson Hardware Co. v. Washington Lumber Co., Harrell, Moore, and Kessenger,* and that the judgments in said action, which were rendered at the December (1911) term, and at the June (1912) term, shall constitute a part of the case on appeal.

"It is further found as a fact, and is admitted by the parties, that the judgment which was rendered at the December (1911) term of the Superior Court was duly docketed, indexed, and recorded, and that the judgment which was rendered at the June (1912) term was docketed, indexed, and recorded, and that said June term of court convened on 27 May, 1912, and adjourned 13 June, 1912.

"It is found as a fact that Harrell and Kessenger conveyed to A. M. Dumay, as trustee, to secure certain indebtedness, certain property or timber rights, a copy of one of the deeds to Harrell and Kessenger being

set out herein and made a part of the statement of this case; it being further found as a fact, and agreed by all parties, that all of the deeds to Harrell and Kessenger are in the form similar to the copy set out herein; that the said deed from Harrell and Kessenger to A. M. Dumay, trustee, which was dated 1 June, 1912, was duly filed for registration in the office of the register of deeds of Beaufort County on 7 June, 1912.

"It is further found as a fact that A. M. Dumay, under the power of sale contained in the deed of trust to him, advertised the timber rights which had been conveyed to him by Harrell and Kessenger, and sold the same to S. R. Fowle, plaintiff in this action, for full value.

"It is further found as a fact that the plaintiff Fowle purchased the property from A. M. Dumay, trustee, without notice in fact of the judgments which had been rendered in the case of *McKeel-Richardson Hardware Co. v. Washington Lumber Co. et al.,* except such notice as was imposed upon him by law.

"It is further found as a fact that execution issued at the instance of the plaintiff in the suit of *McKeel-Richardson Hardware Co. v. Washington Lumber Co. et al.* against L. I. Moore, Washington Lumber Company, and J. R. Kessenger; that the same was returned 'Indulged by order of the plaintiff,' and that on 16 December, 1912, twelve days after the issuance of the execution, L. I. Moore furnished A. D. McLean the money and requested him to pay the same to the plaintiff, and ·to take an assignment of the judgment from the plaintiff McKeel-Richardson Hardware Company to A. D. McLean, as trustee for L. I. Moore.

"It is further found as a fact that the defendant Harrell is not now a resident of the State of North Carolina, and has no property therein sufficient to satisfy an execution issued in the case of *McKeel-Richardson Hardware Co. v. Washington Lumber Co. et al.;* and it is a fact that J. R. Kessenger is dead and that he left no estate on which an execution could issue.

"It is further found as a fact that Harrell is a citizen of the State of Georgia and receiving a salary of about $200 per month."

It appears from perusal of pleadings and judgment, in case of *Hardware Co. v. Lumber Co., Harrell, and Moore et al.,* made a part of the case agreed, that the individual defendants, Harrell, Moore, and others, were liable as indorsers on the notes of the lumber company, and that said company was principal· and primarily liable for the debt on which the judgment was rendered.

His Honor, being of opinion that, on the facts presented, the judgment had been paid and satisfied by reason of the transaction between defendant Moore and the hardware company, the original creditor, and the lien thereof had been extinguished, entered judgment that present defendants be perpetually enjoined from issuing execution on said judg-

ment or taking steps to enforce collection from the timber rights acquired by plaintiff from Harrell and Kessenger, and defendant excepted and appealed.

*Ward & Grimes for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

HOKE, J.   There are numerous decisions in this State to the effect that standing timber is to be considered as realty and that a deed conveying such timber to the grantee and giving power to cut and remove same within a specified period creates a fee-simple estate in realty, not absolute, but defeasible as to all such timber as is not cut and appropriated within the time, and as the correct deduction from the position it was held, at the last term, in *Williams v. Parsons,* 167 N. C., 529, that such an estate, while it exists, is subject to the lien of a docketed judgment and to the ordinary methods of enforcing collection of the same, as in other cases of realty.   Speaking to the subject in *Williams' case,* the Court said:

"We have held in numerous cases that these deeds for standing timber, as ordinarily drawn, convey a fee-simple interest in such timber as realty, determinable as to all such timber as is not cut and removed within the time specified in the deed, and that while such estate exists, it is clothed with the same attributes and subject to the same laws of devolution and transfer as other interests in realty. *Bateman v. Lumber Co.,* 154 N. C., 248; 70 S. E., 474; 34 L. R. A. (N. S.), 615; *Hornthal v. Howcott,* 154 N. C., 229; 70 S. E., 171; *Midyette v. Grubbs,* 145 N. C., 88; 58 S. E., 795; 13 L. R. A. (N. S.), 278; *Lumber Co. v. Corey,* 140 N. C., 467; 53 S. E., 300; 6 L. R. A. (N. S.), 468; *Hawkins v. Lumber Co.,* 139 N. C., 160; 51 S. E., 852.

"This being true, we now see no reason why the sheriff's deed did not convey to plaintiff the interest of W. S. Morrison, at least the equity of redemption existent at the time the judgment was docketed, in January, 1907, and giving him the present right to enter and cut the timber for the remaining period of time as against every one whose interests are now before the Court. *Mayo v. Staton,* 137 N. C., 670; 50 S. E., 331; Revisal 1905, sec. 629."

And in the recent case of *McKinney v. Street,* 165 N. C., 515, the Court held, in a well sustained opinion by *Associate Justice Brown:* "The rule of court, afterwards enacted into a statute, Revisal, secs. 574-575, that all judgments entered during a term shall relate to the beginning of the term and be deemed to have then been entered, is to prevent advantage being taken by litigants who may have been fortunate enough to have first secured their judgment, and unseemly endeavor to get first to the ear of the court; and will not apply to a judgment obtained during

a term of court subsequent by a day or a fraction of a day to the registration of a deed to lands, so as to affect the rights of an innocent *bona fide* purchaser for value."

Again, it is well established in this State that a mortgagee to secure a present loan is to be considered a purchaser for value within the meaning of both 13 Elizabeth, ch. 5, and 27 Elizabeth, ch. 4; Rev., secs. 961-964; and the same principle obtains in reference to mortgages and deeds of trust to secure a past indebtedness except as to an estate or interest existent in the property conveyed. *Sykes v. Everett,* 167 N. C., pp. 600-607; *Branch v. Griffin,* 99 N. C., pp. 174-184; *Brem v. Lockhart,* 93 N. C., 191; *Moore v. Ragland,* 74 N. C., 343; *Potts v. Blackwell,* 57 N. C., 58; same case, 56 N. C., 449.

On perusal of the facts presented, it appears that judgment by default final, in favor of the creditor, was taken at December Term, 1911, of the Superior Court of Beaufort County, against the lumber company, the principal debtor, and W. F. Harrell, one of the indorsers, and same was duly docketed and indexed; and judgment by default final against the other two individual defendants, Moore and Kessenger, on 12 June, 1912, the term of court having commenced 27 May, 1912; and same was duly docketed and indexed; that the property, this timber interest, was acquired by Kessenger and Harrell in February, 1912; that these owners mortgaged the same to Dumay on 1 June, 1912; that the mortgage was registered 7 June, 1912; that same was thereafter duly foreclosed by sale under provision of the deed, and plaintiff Fowle purchased for full value and without notice; and, applying the principles heretofore stated, it follows that the creditor's judgment, obtained and duly docketed in December, 1911, constituted a valid lien against the estate and interest of Harrell, a half owner of the timber, and that the judgment against Kessenger, owner of the other half interest, having been rendered after he had conveyed his interest to a purchaser for value and without notice, same will not constitute a lien on such interest by relation to the first day of the term, and, as to that interest, the plaintiff is the owner, freed from any claim or lien by reason of the judgment.

This being the status of the matter as to the judgment and lien existent in favor of the creditor, the question recurs as to the effect of the transaction between the defendant Moore and said creditor and by which Moore, having advanced the money in payment of the claim, took an assignment of the judgment to McLean, trustee, for the purpose of preserving and enforcing collection according to the rights of the parties.

In 2 Black on Judgments, sec. 995, it is stated to be the general rule on this question, "that payment of a judgment by one of two joint defendants operates as a satisfaction and extinguishment of the judgment, and the defendant cannot take an assignment of it or be subrogated to

the rights of the creditor as against his codefendant or keep the judgment alive in any manner or for any purpose," citing, among other cases, *Dunn v. Beaman,* 126 N. C., 764, and *Towe v. Felton,* 52 N. C., 216, and substantially the same statement is given in 23 Cyc., 1470, as follows: "Under this rule, it is not competent for one joint defendant, on payment of a judgment, to take an assignment of it so as to wield it against his codefendant, and it is none the less extinguished by the payment, although such assignment be made."

Whether this should be regarded as the proper rule in this jurisdiction, where the rights of parties on legal and equitable principles are now administered in one and the same court, it is not necessary to determine, for it has long been recognized with us and so held in numerous decisions that a surety on paying a judgment may preserve the lien as against the principal by taking an assignment to a third person for his benefit, and it has been expressly held that he may do this also as to his cosureties and use it to collect the proportionate part that may be due him in enforcing an equality of obligation between them. *Peebles v. Gay,* 115 N. C., 38; *Rice v. Hearne,* 109 N. C., 150; *Barringer v. Boyden,* 52 N. C., 187.

In many of the courts of this country, most of them, the principle prevails without resorting to an assignment. See case of *Nelson v. Webster,* 72 Neb., 332, reported with a very full and learned note on this subject in 68 L. R. A., p. 513. But in this State the rule is that an assignment to a third person must be taken in order, as stated, to preserve the lien of the judgment. *Tripp v. Harris,* 154 N. C., 296, and cases cited.

In *Jones v. McKinnon,* 87 N. C., 294, in which it was held that a surety could only keep a judgment alive as against a principal, and in several other cases, as in *Towe v. Felton,* in which like intimation was given, the suits were regarded and dealt with as actions at law in which only the enforcement of strictly legal rights was permissible; but if these cases were ever sound, they should not now prevail, and we think the position announced in *Peebles v. Gay* and that line of cases is more in accord with our present more liberal system of procedure, in which both legal and equitable rights are administered in same action and in one and the same court.

Speaking to this question in the *Peebles case,* the Court, among other things, said: "Upon general principles of equity a surety, paying the debt of his principal, was entitled to be substituted to all the rights of the creditor in the premises, as to collaterals, and could enforce the same in a court of equity. This is the doctrine of subrogation, and in it is included the right of the surety, on payment of the judgment, to have an assignment of the same to a trustee for his benefit. Indeed, it was

early laid down by our Court that the only way for a surety to preserve the lien of the judgment against his principal in his own favor was, upon payment by him of the same, to have the judgment assigned to a trustee for his use. If he permitted the judgment to be satisfied without an assignment, the remedy of subrogation was lost." And again: "In some jurisdictions these equitable rights are administered without an actual assignment. 2 Brandt on Suretyship, 309. Upon the same principle of equity and natural justice the right of one surety to compel contribution of another exists, and might have been enforced in a court of equity; as, also, might the right of one surety to the benefit of an indemnity given by his principal to another surety. . . . And it is broadly stated in Brandt on Suretyship, *supra,* that 'A surety who pays his principal's debt is entitled to be subrogated to all the rights and remedies of the creditor against the cosureties in the same manner as against the principal.' This is founded in reason and justice, and up to the adoption of our present Constitution was enforced in the courts of equity. Article IV, sec. 1, of the Constitution abolished the distinction between actions at law and suits in equity, leaving such rights and remedies to be enforced in the one court, which theretofore had administered simple legal rights."

In reference to the amount to be recouped by the surety in this instance, under our former system a surety was liable for his aliquot proportion, to be ascertained by the number of cosureties and without regard to their solvency or the availability of their property; but, in a court of equity and the principles now regarded as controlling, the liability of sureties is made dependent on the principle of equality arising out of a common risk, and, in case of insolvency or nonresidence, these rights are adjusted by reference to the number of sureties who are solvent or have property available to process within the jurisdiction of the court. *Powell v. Matthis,* 26 N. C., 83; Brandt on Suretyship (3 Ed.), sec. 314.

From the facts in evidence, it appears that the principal is insolvent; that the cosurety, Kessenger, is also insolvent and has died leaving no property available to the payment of the judgment or any part of it, and, under the principles heretofore stated, we are of opinion, and so hold, that the defendant Moore, in taking an assignment of the judgment to a trustee, has preserved the right to enforce collection to the extent of one-half the amount against the timber interest formerly belonging to his cosurety, Harrell, the same having been conveyed subject to the lien of the judgment.

The judgment below will be modified in accordance with this opinion and defendant Moore allowed execution for one-half the debt against the timber interests of Harrell in the property which became subject to the liens. The costs of appeal will be divided.

Modified.