ESTATE OF TIMOTHY ALAN HURST BY AND THROUGH CHRISTIAN P. CHERRY AS COLLECTOR,
JEFFREY WAYNE HENLEY AND BEVERLY HENLEY, PLAINTIFFS
v.
PATRICK B. JONES, JEFFREY V. GORDON AND SCOTT L. BIEBER, DEFENDANTS

No. COA12-758

Filed 5 November 2013

**1.  Estoppel—judicial—fraud—intent—good faith**

Where plaintiffs in prior litigation asserted that business entities were one and the same, they were judicially estopped from asserting any inconsistent factual allegations in the present case and could not show that defendant Moorehead's transfer of money to defendant Jones was fraudulent under N.C.G.S. § 39-23.4(a)(2) or 39-23.5. The trial court's entry of summary judgment in favor of plaintiffs was reversed and the matter was remanded for entry of summary judgment in Jones' favor as to these issues. Where there were issues of material fact as to whether Moorehead transferred the money to Jones with fraudulent intent and as to whether Jones took it in good faith, the Court of Appeals reversed the trial court's entry of summary judgment in favor of plaintiffs as to Jones under N.C.G.S. § 39-23.4(a)(1) and remanded the case for a jury trial on these issues.

**2.  Corporations—piercing    corporate    veil—fraud—genuine issues of material fact**

Where defendants Gordon and Bieber failed to cite to the Court of Appeals facts that supported a conclusion that the corporate veil should be pierced as to two corporations, there was no repayment of an antecedent debt to constitute reasonably equivalent value when Moorehead transferred the monies to Gordon and Bieber. There existed genuine issues of material fact under N.C.G.S. §§ 39-23.5, 39-23.4, and 39-23.8 as to plaintiffs' claims against Gordon and Bieber, and the Court of Appeals reversed the trial court's order granting summary judgment in their favor and remanded the case for further evidentiary proceedings.

Appeal by defendants from order filed 24 February 2012 by Judge W. David Lee in Cabarrus County Superior Court. Heard in the Court of Appeals 12 December 2012.

*Law Offices of Dale S. Morrison, by Dale S. Morrison, for plaintiff-appellees Jeffrey Wayne Henley and Beverly Henley.*

*Mills Law PA, by William L. Mills, III for plaintiff-appellee Estate of Timothy Alan Hurst.*

*Sellers, Hinshaw, Ayers, Dortch & Lyons, P.A., by Brett E. Dressler, for defendant-appellant Patrick B. Jones.*

*Ferguson, Scarbrough, Hayes, Hawkins & Demay, P.A., by James R. DeMay, for defendant-appellants Jeffrey V. Gordon and Scott L. Bieber.*

STEELMAN, Judge.

Where plaintiffs in prior litigation asserted that business entities were one and the same, they are judicially estopped from asserting any inconsistent factual allegations in this case and cannot show that Moorehead's transfer to defendant Jones was fraudulent under N.C. Gen. Stat. § 39-23.4(a)(2) or 39-23.5. We reverse the trial court's entry of summary judgment in favor of plaintiffs and remand for entry of summary judgment in Jones' favor as to these issues. Where there are issues of material fact as to whether Moorehead made the transfer of monies to Jones with fraudulent intent and as to whether Jones took in good faith, we reverse the trial court's entry of summary judgment in favor of plaintiffs as to Jones under N.C. Gen. Stat. § 39-23.4(a)(1) and remand for a jury trial on these issues.

Where defendants Gordon and Bieber failed to cite this Court to facts that support a conclusion that the corporate veil should be pierced as to two corporations, we hold that there was no repayment of an antecedent debt to constitute reasonably equivalent value when Moorehead transferred the monies to Gordon and Bieber. There exist genuine issues of material fact under N.C. Gen. Stat. § 39-23.5, 39-23.4, and 39-23.8 as to plaintiffs' claims against Gordon and Bieber, and we reverse the trial court's order granting summary judgment in their favor and remand for further evidentiary proceedings consistent with this opinion.

## I.  Factual and Procedural History

On 28 June 2006, Timothy Alan Hurst (Hurst) and Jeffrey Henley (Henley) entered into a Purchase and Sale Agreement with Cramer

Mountain Development, LLC (Cramer Mountain) under the terms of which Hurst and Henley agreed to sell to Cramer Mountain two tracts of land in Cabarrus County, containing approximately 73 acres and 3.5 acres, for $4,700,000. On 2 March 2007, Moorehead I, LLC (Moorehead) was incorporated. On 12 March 2007, Cramer Mountain assigned its rights in the Purchase and Sale Agreement to Moorehead. The Purchase and Sale Agreement provided that at closing Hurst and Henley would be paid $1,000,000. The balance of the purchase price, $3.7 million, would be owner-financed for twelve months at an interest rate of prime rate plus one percent. This debt was to be secured by a mortgage on the property that was to be in "second position on the property behind buyer's financing." The purchaser had the option to extend the owner-financing for another year upon the payment of an additional $2,000,000 under the same terms.

In February of 2007, Hurst and Henley were advised that the buyer wanted to make an additional advance of $200,000. Hurst and Henley understood that this would not be the closing on the property, which would take place in June. The June closing would include an Internal Revenue Code Section 1031 exchange of property. Henley, his wife, and Hurst met with the manager of Cramer Mountain, Frank DeSimone (DeSimone), at Henley's farm. DeSimone printed documents from his computer that were signed by the Henleys and Hurst.[1] The transaction in fact was not merely an additional advance towards the purchase of the property, but a closing. Hurst and the Henleys executed a deed for the two tracts of land on 13 March 2007 and received $200,000. Moorehead executed a note in the amount of $4,500,000 secured by a second deed of trust upon the two tracts. Moorehead borrowed $3,400,000 from F&M Bank, which was secured by a first deed of trust on the two tracts conveyed by Hurst and Henley, and an additional tract of nine acres. Moorehead left the closing with $2,078,546.41 after deducting closing expenses. This sum was deposited into the bank account of Moorehead.

On 14 March 2007, Moorehead wired $650,000 to Pat Jones (Jones). On 14 March 2007, Moorehead transferred $380,383.74 from its bank account to Jeff Gordon (Gordon) by debit memo. Also on 14 March 2007, Moorehead transferred $380,383.74 from its account to Scott Bieber (Bieber) by debit memo.

Jones had previously loaned $500,000 to Park West Development Company (Park West) on 8 June 2006 at an interest rate of 30% per

---

1. Hurst became ill at the farm and went home, where he signed documents. The Henleys signed the documents at the farm.

annum, which was due on 28 February 2007. The promissory note from Park West to Jones was signed by Bruce Blackmon (Blackmon) as President. On 10 November 2005, Gordon and Bieber had each loaned $300,000 to Investments International Incorporated (Investments) at an interest rate of 20% per annum. A promissory note in the amount of $600,000 was issued jointly to Gordon and Bieber, and was signed by Blackmon on behalf of Investments.

On 29 July 2008, Hurst[2] and Henley filed suit in Cabarrus County Superior Court against Blackmon, Moorehead, Park West, Cramer Mountain, and other corporations and individuals.[3] Investments was not a party to this litigation. This complaint alleged claims for fraud and unfair and deceptive trade practices. Hurst and Henley alleged that they only received $200,000 at closing rather than the $1,000,000 provided for in the Purchase and Sale Agreement, that there was no 1031 exchange, and that the proceeds of the F&M Bank Loan were "diverted and not used as part of the payment towards the purchase price of the Property." Plaintiffs additionally sought to pierce the corporate veil with respect to Blackmon, DeSimone, and their related entities. This case was tried at the 24 January 2011 session of Civil Superior Court for Cabarrus County before a jury. Judgment was entered against Blackmon and Moorehead in the amount of $4,900,000 plus interest.[4] The jury returned a verdict in favor of plaintiffs as follows:

> Issue No. 11. Did defendant Bruce Blackmon control Moorehead I, LLC, Park West Development Company, Park West Investments, Inc., Park West Premier Properties, LLC and/or Park West-Stone, LLC with regard to the acts or omissions that damaged the plaintiffs?
>
> A.  Moorehead I, LLC
>
> ANSWER: X Yes __No

---

2. Hurst died on 17 May 2007 and his estate is now the party in both the 2008 and instant case. We will refer to Hurst and his estate through this opinion as "Hurst."

3. Plaintiffs filed suit against Moorehead I, LLC; Cramer Mountain Development Company, LLC; Park West Premier Properties, LLC; Park West Investments, Inc.; Park West-Stone, LLC; Park West Development Company; Cobblestone Builders, LLC; David Cox Premier Properties LLC; Frank DeSimone; Bruce Blackmon; Gregory A. Mascaro; Leslie Danielle Harrison; and F&M Bank.

4. This case was heard in the Court of Appeals on 27 March 2013. The judgment of the trial court was affirmed as to Blackmon. *Hurst v. Moorehead, LLC*, No. COA12-1285, __ N.C. App. __, __, (Filed 6 August 2013). The appeal of the remaining defendants was dismissed. *Id.*

**ESTATE OF HURST v. JONES**

[230 N.C. App. 162 (2013)]

B. Park West Development Company

ANSWER: X Yes __No

C. Park West Investments, Inc.

ANSWER: X Yes __No

D. Park West Premier Properties, LLC

ANSWER: X Yes __No

E. Park West-Stone, LLC        .

ANSWER: X Yes__No

The judgment held:

> Defendant Bruce B. Blackmon, Jr. is the alter-ego of
> Defendants Moorehead I, LLC, Park West Development
> Company, Park West Investments, Inc., Park West Premier
> Properties, LLC and Park West-Stone, LLC. All awards
> against these Defendant entities shall also be an award
> against Defendant Bruce B. Blackmon, Jr. in his individ-
> ual capacity and all awards against Defendant Bruce B.
> Blackmon, Jr. shall be an award against these Defendant
> entities, jointly and severally.

On 31 March 2011[5], Hurst and Henley filed the complaint in the instant action. The complaint asserted that the transfers by Moorehead to Jones, Bieber, and Gordon were fraudulent and in violation of the Uniform Fraudulent Transfer Act, Article 3A of Chapter 39 of the North Carolina General Statutes. Each of the defendants filed answers which pled a number of affirmative defenses, including estoppel. Following discovery, Gordon and Bieber filed a motion for summary judgment on 6 December 2011. Plaintiffs filed a motion for summary judgment on 22 December 2011. On 4 January 2012, Jones entered a motion for summary judgment. The trial court held that plaintiffs were entitled to judgment as a matter of law and entered judgment against Jones in the amount of $650,000, against Gordon in the amount of $380,383.74, and against Bieber in the amount of $380,383.74. Each judgment was to bear interest at the legal rate from the date of the filing of the complaint.

Jones, Gordon, and Bieber appeal.

---

5. Plaintiffs commenced this action on 11 March 2011 through the issuance of an Application and Order Extending Time to File Complaint.

## II.  Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).

## III.  Jones' Appeal

[1] In his first argument on appeal, Jones contends that plaintiffs are estopped from contending that Park West, Moorehead, and Blackmon are not one and the same entity. We agree.

### A.  Judicial Estoppel

"[J]udicial estoppel seeks primarily to protect the integrity of judicial proceedings" and has no requirement of "mutuality of the parties." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 16-17, 591 S.E.2d 870, 881 (2004). " 'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . .' " *Id.* at 22, 591 S.E.2d at 884 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 149 L.Ed. 2d 968, 977). The North Carolina Supreme Court has enumerated three factors that typically influence the decision of whether to apply judicial estoppel in a particular case:

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship*, 358 N.C. at 29, 591 S.E.2d at 888-89 (citations omitted). The "recognition of judicial estoppel is limited to the context of inconsistent factual assertions and that the doctrine should not be applied to prevent the assertion of inconsistent legal theories." *Id.* at 32, 591 S.E.2d at 890.

After examining these three factors, we hold that the doctrine of judicial estoppel applies in this case. In their complaint in Cabarrus County case 08-CVS-2800, plaintiffs alleged that Blackmon had failed to observe the proper corporate formalities for Moorehead and Park West, and that "Blackmon [held] complete domination, not only of finances, but of policy and business practice, in [Moorehead and Park West] so that the entities had no separate mind, will, or existence of their own." Plaintiffs succeeded in their assertion of this position, persuading the jury to so find and resulting in the entry of judgment in their favor. This Court subsequently affirmed that judgment. Plaintiffs now assert in the instant case that Moorehead repaid a debt that it did not owe and did not receive reasonably equivalent value in exchange for the transfer to Jones because Moorehead and Park West were separate corporate entities. This position is clearly inconsistent with their prior assertion. The acceptance of plaintiffs' subsequent inconsistent position in the instant case would "pose[] a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled." *Id.* at 29, 591 at 888-89. Lastly, we consider whether plaintiffs' inconsistent position would impose an unfair detriment to Jones. Jones was not a party to the prior litigation; however, he, like plaintiffs, was a creditor of the Blackmon, Moorehead, Park West corporate structure. We see no reason why plaintiffs should be able to assert one set of facts in their 2008 action against Blackmon and his related entities, and then assert an inconsistent factual position against Jones. To do so would threaten the judicial integrity of the courts of this state. We apply the principles of judicial estoppel, and hold that plaintiffs are estopped from asserting that Blackmon, Moorehead, and Park West were separate entities.

### B. Reasonably Equivalent Value

Under N.C. Gen. Stat. § 39-23.4:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) With intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4 (2011). Similarly, as to present creditors, N.C. Gen. Stat. § 39-23.5 requires the debtor to have made the transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." N.C. Gen. Stat. § 39-23.5 (2011). North Carolina General Statutes § 39-23.3(a) defines "value" as follows: "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." N.C. Gen. Stat. § 39-23.3 (2011). To evaluate whether reasonably equivalent value was exchanged, we examine the net effect of the transaction on the debtor's estate and whether there has been a net loss to the debtor's estate as a result of the transaction. *Cf. Miller v. First Bank*, 206 N.C. App. 166, 173-74, 696 S.E.2d 824, 828 (2010) (discussing the appropriate analysis to determine reasonably equivalent value in a multi-party transaction in the indirect benefit context).

We apply these principles to the uncontested facts of the instant case. Plaintiffs cannot assert that Moorehead, Park West, and Blackmon were separate entities. Jones loaned $500,000 to Park West on 8 June 2006. On 14 March 2007, Moorehead wired $650,000 to Jones in satisfaction of Park West's debt to Jones. This was a payment of an antecedent debt under N.C. Gen. Stat. § 39-23.3(a), and was therefore given for value. An essential element of a transfer in fraud of creditors claim under either N.C. Gen. Stat. § 39-23.4(a)(2) or N.C. Gen. Stat. § 39-23.5 is that the transfer was made without the debtor receiving "reasonably equivalent value." We hold that the repayment of an antecedent debt owed by Park West was also a debt of the Moorehead, Park West, Blackmon corporate entity and that the payment to Jones was in exchange for a "reasonably equivalent value." We therefore reverse the portion of the trial court's order granting summary judgment in favor of plaintiffs against Jones as to their claims under N.C. Gen. Stat. § 39-23.4(a)(2) and 39-23.5 and remand for entry of summary judgment in Jones' favor on this issue.

## C. Fraudulent Intent and Good-Faith Transferee

Jones concedes in his brief that there remain genuine issues of material fact as to whether Moorehead made the transfer of monies to him with the intent to hinder, delay, or defraud any creditor; however, he also contends that summary judgment should have been entered in his favor because he was a good-faith transferee. We disagree.

N.C. Gen. Stat. § 39-23.4(b) provides a non-exhaustive list of factors to be considered in determining fraudulent intent, including whether: the transfer or obligation was concealed; the debtor has been sued or threatened with suit; the transfer was of substantially all the debtor's assets; the debtor concealed assets; the debtor was insolvent or became insolvent shortly after the transfer was made; and the transfer occurred shortly before or shortly after a substantial debt was incurred. N.C. Gen. Stat. § 39-23.4(b). "[I]ntent is an operation of the mind, it should be proven and found as a fact, and is rarely to be inferred as a matter of law." *Danville Lumber & Mfg. Co. v. Gallivan Bldg. Co.*, 177 N.C. 104, 107, 97 S.E. 718, 720 (1919).

Despite the fact that the transfer to Jones may have been made with fraudulent intent, the transfer is not voidable if Jones can establish that he was a "good-faith transferee for value" and is entitled to protection under N.C. Gen. Stat. § 39-23.8(a). Under this statute, "[a] transfer or obligation is not voidable under G.S. 39-23.4(a)(1) against a person who took in good faith and for a reasonably equivalent value . . . ." N.C. Gen. Stat. § 39-23.8(a) (2011). The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged. N.C. Gen. Stat. § 39-23.8, Official Cmt. 1.

Jones has established that he took for a reasonably equivalent value, however, he has not directed us to any conclusive facts in the record that demonstrate that he took in good faith. We therefore remand this issue to the trial court for a determination by a jury as to whether the Moorehead, Park West, Blackmon structure transferred the monies to Jones with the intent to defraud plaintiffs and if so, whether Jones can assert an affirmative defense under N.C. Gen. Stat. § 39-23.8(a).

## IV. The Appeal of Gordon and Bieber

[2] In their appeal, Gordon and Bieber contend that the trial court erred in granting summary judgment in favor of plaintiffs. We agree in part, and remand.

### A. Plaintiffs' Claims under N.C. Gen. Stat. § 39-23.5

In order to establish the transfers made from Moorehead to Gordon and Bieber were fraudulent under N.C. Gen. Stat. § 39-23.5, plaintiffs must show that (1) their claim arose before the transfers were made; (2) Moorehead made the transfers without receiving a reasonably equivalent value in exchange; and (3) Moorehead was insolvent at the time or became insolvent as a result of the transfer. N.C. Gen. Stat. § 39-23.5; *Miller*, 206 N.C. App. at 170-71, 696 S.E.2d at 827.

We will now analyze each of these elements in the context of plaintiffs' claims against Gordon and Bieber.

### 1. Timing of Transactions

Plaintiffs' claims arise out of the closing that took place on 13 March 2007. The transfers to Gordon and Bieber took place on 14 March 2007. Thus the claims of plaintiffs arose prior to the contested transfers. We further note that on appeal, Gordon and Bieber do not contest this element. The ruling of the trial court as to this element is affirmed.

### 2. Reasonably Equivalent Value

Gordon and Bieber contend that the payments to them by Moorehead on 14 March 2007 were for reasonably equivalent value. This is based upon their assertion that Moorehead and Investments are alter ego entities. Gordon and Bieber assert that "as Plaintiffs proved in the Blackmon Litigation, the Blackmon Entities are all alter-egos . . . value received by Investments International is also value to Moorehead." They further assert that "[w]hat is striking in the case at bar is that Plaintiffs have *already proven* that Blackmon is the alter-ego of the Blackmon Entities." The flaw in this argument is that Investments was not a party to the prior litigation, plaintiffs never asserted that Investments, Moorehead, and Blackmon were not separate entities, and there was no determination that Investments was controlled by Blackmon to the extent that they were not separate entities. Therefore, there can be no judicial estoppel as was present as to plaintiffs' claims against Jones.

On appeal, Gordon and Bieber do not cite this Court to facts in the record that would support a conclusion that Investments was an alter ego of Moorehead, nor do they argue that there were material issues of fact as to whether Investments was the alter ego of Moorehead or Blackmon. Rather, they rely solely upon the mistaken belief that the prior litigation established this fact.

Without an alter ego relationship between Investments and Moorehead, we must treat the two corporations as separate entities. As such, there can be no payment of an antecedent debt. However, this does not end our inquiry as to whether or not Moorehead received a reasonably equivalent value in exchange for the payment of monies to Gordon and Bieber.

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

N.C. Gen. Stat. § 39-23.3(a). While it is uncontroverted that Moorehead directly transferred the sum of $380,383.74 to each of Gordon and Bieber on 14 March 2007, Gordon and Bieber refer us to the testimony of Blackmon and his bookkeeper, Patricia Duckworth (Duckworth), that the books of Moorehead and Investments reflect an intercompany loan from Moorehead to Investments. The testimony of Blackmon and Duckworth as to the alleged intercompany loan created an issue of fact as to whether the transfer of money to them was in exchange for a reasonably equivalent value.

Plaintiffs argue that this "loan" cannot constitute value under N.C. Gen. Stat. § 39-23.3 because it is nothing more than an unperformed promise made otherwise than in the ordinary course of business to furnish support to the debtor. Under N.C. Gen. Stat. § 39-23.3(a), such an unperformed promise does not constitute value. The Official Comment to N.C. Gen. Stat. § 39-23.3 indicates that the current statute represents a departure from the provisions of the earlier Uniform Fraudulent Conveyances Act that was thought not to recognize an unperformed promise as fair consideration. Section 4 of the Official Comment goes on to discuss judicial exceptions to this principle:

> Courts construing these provisions of the prior law nevertheless have held unperformed promises to constitute value in a variety of circumstances. See, e.g., Harper v. Lloyd's Factors, Inc., 214 F.2d 662 (2d Cir. 1954) (transfer of money for promise of factor to discount transferor's purchase-money notes given to fur dealer); Schlecht v. Schlecht, 168 Minn. 168, 176-77, 209 N.W. 883, 886-87 (1926) (transfer for promise to make repairs and improvements on transferor's homestead); Farmer's Exchange

Bank v. Oneida Motor Truck Co., 202 Wis. 266, 232 N.W. 536 (1930) (transfer in consideration of assumption of certain of transferor's liabilities); see also Hummel v. Cernocky, 161 F.2d 685 (7th Cir. 1947) (transfer in consideration of cash, assumption of a mortgage, payment of certain debts, and agreement to pay other debts). Likewise a transfer in consideration of a negotiable note discountable at a commercial bank, or the purchase from an established, solvent institution of an insurance policy, annuity, or contract to provide care and accommodations clearly appears to be for value. On the other hand, a transfer for an unperformed promise by an individual to support a parent or other transferor has generally been held voidable as a fraud on creditors of the transferor. See, e.g., Springfield Ins. Co. v. Fry, 267 F.Supp. 693 (N.D.Okla. 1967); Sandler v. Parlapiano, 236 App.Div. 70, 258 N.Y.Supp. 88 (1st Dep't 1932); Warwick Municipal Employees Credit Union v. Higham, 106 R.E. 363, 259 A.2d 852 (1969); Hulsether v. Sanders, 54 S.D. 412, 223 N.W. 335 (1929); Cooper v. Cooper, 22 Tenn.App. 473, 477, 124 S.W.2d 264, 267 (1939); Note, Rights of Creditors in Property Conveyed in Consideration of Future Support, 45 Iowa L.Rev. 546, 550-62 (1960). This Act adopts the view taken in the cases cited in determining whether an unperformed promise is value.

N.C. Gen. Stat. § 39-23.3, Official Cmt. 4. The Official Comment indicates that an unperformed promise may be consideration except for an executory promise to support another person.

This interpretation of the statute is confirmed by the North Carolina Comment to N.C. Gen. Stat. § 39-23.3:

Prior North Carolina law has dealt with what constitutes "full value" or "good consideration," terms that were employed in former N.C. Gen. Stat. § 39-16 and -19. The inquiry has generally focused on the amount of consideration, however, rather than on its character. Two types of consideration that have been analyzed in prior law are prior indebtedness (so-called "antecedent debt") and unfulfilled ("executory") promises. As to antecedent debt, prior North Carolina law laid down the same rule as that set out in subsection (a): antecedent debt qualified as consideration. *See Fowle v. McLean,* 168 N.C. 537, 541, 84 S.E. 852, 854 (1915). *See also Howard,* 50 *N.C. L. Rev.* at 880-81.

Executory promises of support constituted consideration under prior North Carolina law, subject to a number of exceptions and limits. Services furnished to relatives were presumed to be gratuitous; the relationship of the parties could go far toward raising a presumption that a transfer involved fraudulent intent. *See Howard,* 50 *N.C. L. Rev.* at 881-82. Subsection (a) excludes from the definition of value unperformed promises to furnish support, subject only to an exception for a promise made in the ordinary course of the provisor's business. This blanket exclusion represents a change from prior North Carolina law. Subsection (a) does not expressly address unperformed promises other than to furnish support. *But see* Official Comment 4.

N.C. Gen. Stat. § 39-23.3, N.C. Cmt.

In the instant case, the "book entry loan" from Moorehead to Investments was not a promise "to furnish support to the debtor or another person," and does not fall under the exclusion contained in N.C. Gen. Stat. § 39-23.3(a). There remains an issue of fact as to whether Moorehead made the transfers of monies to Gordon and Bieber and received a reasonably equivalent value in exchange. This element is remanded to the trial court for a determination as to whether the "book entry loan" from Moorehead to Investments constitutes adequate consideration and reasonably equivalent value.

### 3. Insolvency at Time of Transfer

As to this element, Gordon and Bieber contend that if the assets and liabilities of Moorehead, Park West, and Investments are aggregated, then the collective entities were not insolvent. Because it has not been established that Moorehead and Investments were alter ego entities, it would be improper to include the assets and liabilities of Investments in our analysis of the insolvency of Moorehead. However, as discussed in section III.A of this opinion, plaintiffs are unable to assert that Moorehead, Park West, and Blackmon were separate entities. There was evidence presented to the trial court at the hearing on the summary judgment motions that at the time of the transfers to Gordon and Bieber that Park West had net assets of $865,024.69.

In addition, conflicting evidence was presented as to the value of the real estate owned by Moorehead at the time of the transfer. We hold that there exist genuine issues of material fact as to whether Moorehead was insolvent at the time of the transfers to Gordon and Bieber, and that

the trial court erred in granting summary judgment in favor of plaintiffs as to Gordon and Bieber. This element is remanded to the trial court for resolution before a jury.

### B.  Plaintiffs' Claims under N.C. Gen. Stat. § 39-23.4

Plaintiffs also asserted claims against Gordon and Bieber under N.C. Gen. Stat. § 39-23.4, which provides two different theories of recovery. Based upon our discussion of fraudulent intent in section III.C of this opinion and the evidence in the record, we hold that there exist genuine issues of material fact as to whether Moorehead's transfers to Gordon and Bieber were fraudulent under N.C. Gen. Stat. § 39-23.4(a)(1).

Because there exist genuine issues of material fact as to whether Moorehead was insolvent at the time of the transfers to Gordon and Bieber, there also exist genuine issues of material fact under N.C. Gen. Stat. § 39-23.4(a)(2) as to whether at the time of the transfers Moorehead was about to engage in a transaction in which its remaining assets were unreasonably small, or intended to incur debts beyond its ability to pay.

We reverse the order of the trial court granting summary judgment in favor of plaintiffs' claims under N.C. Gen. Stat. § 39-23.4 and remand for further evidentiary proceedings to determine: (1) whether Moorehead made the transfers with fraudulent intent as described in N.C. Gen. Stat. § 39-23.4(a)(1); and (2) whether Moorehead was engaged or about to engage in a business or transaction for which its remaining assets were unreasonably small or whether Moorehead intended to incur debts beyond its ability to pay as they became due as described in N.C. Gen. Stat. § 39-23.4(a)(2).

### C.  Affirmative Defenses under N.C. Gen. Stat. § 39-23.8(b)(2)

In their second argument, Gordon and Bieber contend that if we determine the transfer was fraudulent, then there exist genuine issues of material fact as to whether they were good faith subsequent transferees under N.C. Gen. Stat. § 39-23.8(b)(2). We agree.

N.C. Gen. Stat. § 39-23.8(a) and (b) provide that:

> (a) A transfer or obligation is not voidable under G.S. 39-23.4(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

> (b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor

under G.S. 39-23.7(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

(1) The first transferee of the asset or the person for whose benefit the transfer was made; or

(2) Any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.

N.C. Gen. Stat. § 39-23.8(a) and (b) (2011). This statute provides a defense for transferees under certain specific circumstances. Under subsection (a), even though the transfer was made with the "intent to hinder, delay or defraud" a creditor of the debtor, the transfer is not voidable in two situations: (1) the transferee took in good faith and for reasonably equivalent value; or (2) the transferee was a subsequent transferee. *Id.* Under subsection (b), the amount of the transfer that can be set aside pursuant to N.C. Gen. Stat. § 39-23.7(a)(1) is limited to the adjusted value of the asset transferred or the amount of the creditor's claim, whichever is less. *Id.* Under subsection (b)(2), there are again two exceptions for: (1) a good faith transferee who took for value; or (2) any subsequent transferee. *Id.*

The North Carolina Comment to N.C. Gen. Stat. § 39-23.8 makes it clear that as was the case under prior North Carolina law, the transferee "has the burden of establishing good faith and the reasonable equivalence of the consideration exchanged." N.C. Gen. Stat. § 39-23.8, N.C. Cmt; *See also Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914). In the instant case, defendants Gordon and Bieber bear the burden of establishing an affirmative defense pursuant to N.C. Gen. Stat. § 39-23.8.

In order to avail themselves of the affirmative defenses under N.C. Gen. Stat. § 39-23.8, Gordon and Bieber must show either that: (1) they were an initial transferee from the debtor who took for value; or (2) that they were a "subsequent transferee." A subsequent transferee is not required to demonstrate that they took in good faith or for value. *See* N.C. Gen. Stat. § 39-23.8(a) and (b)(2). On appeal, Gordon and Bieber's argument appears to be a conflation of the two defenses available under N.C. Gen. Stat. § 39-23.8: that they were "good faith subsequent transferees."

It is uncontroverted that Moorehead directly transferred the sum of $380,383.74 to each of Gordon and Bieber on 14 March 2007. This

sum was paid in satisfaction of the debt of Investments to Gordon and Bieber. Gordon and Bieber direct us to the testimony of Blackmon and Duckworth, that the books of Moorehead and Investments reflect an intercompany loan from Moorehead to Investments, and that the transfer of funds should be viewed as a two-step transaction: first a loan from Moorehead to Investments, followed by a payment by Investments of antecedent debts owed to Gordon and Bieber. They contend that they are thus "subsequent transferees" and entitled to the affirmative defense under N.C. Gen. Stat. § 39-23.8. It is clear that "subsequent transferees" are excepted from the requirement of showing good faith and value for the transfer. However, the rationale for this lesser showing is that the transferee did not deal directly with the debtor. The language of the statute indicates that there is a point in a chain of transfers, beyond which it would be inequitable to continue voiding the transfers. In the instant case, Gordon and Bieber were direct transferees of the monies from Moorehead. As such, they cannot be subsequent transferees.

However, this does not end our inquiry as to the applicability of an affirmative defense under N.C. Gen. Stat. § 39-23.8. As discussed in section IV.A.2 of this opinion, the testimony of Blackmon and Duckworth as to the alleged intercompany loan created an issue of fact as to whether this loan from Moorehead to Investments constitutes value and thus, whether Gordon and Bieber were transferees in good faith and for value. We hold that the trial court properly granted summary judgment as to Gordon and Bieber's defense of being a subsequent transferee. However, the trial court erred in granting summary judgment as to whether they were good faith transferees for value.

### D. Equity Arguments

Gordon and Bieber raise equity arguments on appeal under N.C. Gen. Stat. § 39-23.10 and 39-23.8(c). N.C. Gen. Stat. § 39-23.10 provides that the provisions of the UFTA are supplemented by the principles of equity, including estoppel. N.C. Gen. Stat. § 39-23.8(c) provides that when a judgment is entered "the judgment shall be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." Gordon and Bieber make an argument under N.C. Gen. Stat. § 39-23.10 based upon the assumption that the corporate veil was pierced as to Investments. As discussed in section IV.A.2 of this opinion, this argument is rejected. They also make a vague and confusing argument that because some of the earnest money and installment payments to plaintiffs were made by either a DeSimone or Blackmon controlled entity that plaintiffs cannot now complain that Gordon and Bieber were repaid by the wrong entity. We note that this argument does

not set forth how the principles of estoppel are applicable to this fact situation, nor does it specify which theory of estoppel is applicable to this case. It is not the role of this Court to construct arguments for the parties, or to flush out incomplete arguments. *See First Charter Bank v. Am. Children's Home*, 203 N.C. App. 574, 580, 692 S.E.2d 457, 463 (2010). This argument, as made by Gordon and Bieber, is without merit.

As to their argument under N.C. Gen. Stat. § 39-23.8(c), the Official Comment to this section makes it clear that it is applicable only when there is a question about the value of a tangible asset being conveyed. Examples cited include where the transferee made improvements to the property that enhances its value, or the property was subjected to liens that reduced its value. N.C. Gen. Stat. § 39-23.8, Official Cmt. 3. This is confirmed by the North Carolina Comment to subsection (c) which states that it "is significant if the value of an asset has changed while in the hands of a transferee." N.C. Gen. Stat. § 39-23.8, N.C. Cmt. In the instant case, the asset transferred to Gordon and to Bieber was $380,383.74 in cash. We hold that the transfer of cash is not subject to the equitable adjustments contemplated by N.C. Gen. Stat. § 39-23.8(c).

This argument is without merit.

## V. Conclusion

We reverse the portion of the trial court's order granting summary judgment to plaintiffs against Jones and remand for further evidentiary proceedings to determine whether the transfer to Jones was made with the intent to hinder, delay, or defraud plaintiffs under N.C. Gen. Stat. § 39-23.4(a)(1) and whether Jones took in good faith. Because Moorehead's transfer to Jones was made in exchange for a reasonably equivalent value, we reverse the portion of the trial court's order granting summary judgment to plaintiffs against Jones as to their claims under N.C. Gen. Stat. § 39-23.4(a)(2) and 39-23.5 and remand for entry of summary judgment in Jones' favor on those issues.

We reverse the entry of summary judgment as to Gordon and Bieber and remand this matter to the trial court for further evidentiary proceedings to determine: (1) whether the alleged intercompany loan between Moorehead and Investments constitutes reasonably equivalent value; (2) whether Moorehead was insolvent at the time of the transfers to Gordon and Bieber; (3) whether Moorehead made the transfers to Gordon and Bieber with intent to hinder, delay, or defraud plaintiffs; (4) whether Moorehead was engaged in or about to engage in business or transactions for which its remaining assets were unreasonably small; (5) whether Moorehead intended to incur or believed it would incur debts

beyond its ability to pay; and (6) if the transfer is fraudulent, whether Gordon and Bieber are good faith transferees who took for value.

All other portions of the trial court's order are affirmed.

REVERSED AND REMANDED IN PART, AFFIRMED IN PART.

Judges STEPHENS and McCULLOUGH concur.