Poulos v. Poulos, 2016 NCBC 71.

STATE OF NORTH CAROLINA

COUNTY OF CUMBERLAND

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1116

MARIA HONTZAS POULOS,
               Plaintiff,

       v.

JOHN E. POULOS, M.D.; ICARIAN
PARTNERS, LLC; MEEJ, LLC; JEP
INVESTMENTS, LLC; OCIE F. MURRAY,
JR. as Trustee of the John E. Poulos Family
Trust; EMANUEL POULOS, as Named
Beneficiary of the John E. Poulos Family
Trust; and ELIZABETH POULOS, as
Named Beneficiary of the John E. Poulos
Family Trust,
               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER ON MOTION
FOR SUMMARY JUDGMENT**

THIS CAUSE was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases.

THIS MATTER comes before the Court upon Defendant Ocie F. Murray, Jr.'s, ("Murray") as trustee of the John E. Poulos Family Trust, Motion for Summary Judgment[1] ("Murray Motion") and Defendants John E. Poulos, Icarian Partners, LLC, MEEJ, LLC, and JEP Investments, LLC's (collectively the "Poulos Defendants") Motion for Summary Judgment ("Poulos Defendants' Motion") pursuant to Rule 56 of

---

[1] As discussed infra, Plaintiff has taken a voluntary dismissal of her claims against the Family Trust and Murray as its trustee.

the North Carolina Rules of Civil Procedure ("Rule(s)") and Rule 15 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"). The Court heard oral arguments on the Motions on May 12, 2016.

THE COURT, having considered the Motions, briefs in support of and opposition to the Motions, the oral arguments, and other appropriate matters of record, FINDS and CONCLUDES that the Murray Motion should be GRANTED, but that Murray and the John E. Poulos Family Trust should remain in the case as nominal defendants for purposes of providing complete relief to Plaintiff should she prevail, and that the Poulos Defendants' Motion should be GRANTED in part, and DENIED in part.

> *The Armstrong Law Firm, P.A., by L. Lamar Armstrong, Jr., Esq., and L. Lamar Armstrong, III, Esq., for Plaintiff.*
>
> *The Law Offices of Lonnie M. Player, Jr., PLLC, by Lonnie M. Player, Jr., Esq., and Jennifer L. Malone, Esq., and MCCOY WIGGINS CLEVELAND & O'CONNOR, PLLC, by Richard M. Wiggins, Esq., and Kenneth B. Dantinne, Esq., for the Defendants.*

McGuire, Judge.

I.    INTRODUCTION.

1.    This lawsuit arises from the breakdown of the marriage of Plaintiff Maria Hontzas Poulos ("Plaintiff") and Defendant John E. Poulos, M.D. ("Dr. Poulos") and their subsequent divorce. Plaintiff alleges that Dr. Poulos determined that the marriage was headed towards a divorce and made a series of fraudulent transfers of the couple's marital assets, first into a limited liability company in which he was the sole interest owner, and then into an irrevocable trust for the benefit of the couple's

children, Emanuel and Elizabeth. Plaintiff alleges that Dr. Poulos transferred the couple's assets to the trust to keep Plaintiff from being able to claim them as part of an equitable distribution in the divorce. Plaintiff contends that Dr. Poulos' conduct breached the fiduciary duty he owed her as his wife and constituted a fraud, and asks that the trust be voided and for an accounting of the assets held by the trust. Dr. Poulos denies these allegations and contends that he transferred the assets into the limited liability company, and then the trust, to put the couple's assets outside the reach of creditors in the event of malpractice suits, and as part of his "estate planning" for the couple. He also claims that he truthfully disclosed the purposes of the transfers to Plaintiff. Finally, Dr. Poulos contends that the transfers into the trust did not benefit him personally since he too is now unable to access those assets. Poulos Defendants seek summary judgment as to all of Plaintiff's claims.

II. FACTUAL AND PROCEDURAL BACKGROUND.

2. Plaintiff and Dr. Poulos married on January 25, 1992. Dr. Poulos is a licensed physician and Plaintiff a licensed dentist; both practice in Fayetteville, North Carolina. Elizabeth Poulos ("Elizabeth") is the daughter, and Emanuel Poulos ("Emanuel") is the son, of Plaintiff and Dr. Poulos. Elizabeth and Emanuel have been named as nominal defendants only because they are the beneficiaries of Defendant John E. Poulos Family Trust ("the Family Trust").

3. Over the course of their marriage, Plaintiff and Dr. Poulos apparently accumulated a relatively large amount of real property, and some investment assets, and owned them through various limited liability companies. The record reflects that

at or about the occurrences relevant to this lawsuit, the couples' assets had a value of more than $4 million. (Exh. 31 - Icarian Financial Statement 6/30/12. [2])

4. Defendant Icarian Partners, LLC ("Icarian") is a North Carolina limited liability company ("LLC"). (Exh. 6 - Icarian Articles of Organization ¶ 1.) Icarian was formed on December 31, 2007, as a member-managed LLC. Dr. Poulos and Arthur Patelos ("Patelos") executed Icarian's original operating agreement in January 2008. (Exh. 7 - Icarian Original Operating Agreement.) The original operating agreement provided that Dr. Poulos and Patelos were each 50% interest holders in Icarian. (*Id.* ¶ 3.) On January 28, 2010, Dr. Poulos bought Patelos' interest in Icarian. (Exh 11 - Bill of Sale - Patelos' Interest in Icarian to Dr. Poulos.) On April 12, 2012, Dr. Poulos amended the operating agreement to make Icarian a manager-managed LLC. (Exh. 29 - Amended Icarian Operating Agreement.) Although Dr. Poulos claims, and the corporate documents in the record indicate, that he has been the 100% owner of Icarian since January 28, 2010, Icarian's 2010 and 2011 tax returns and 2010 and 2011 Schedule K-1s issued to Plaintiff and Dr. Poulos (collectively, the "Tax Documents") list Plaintiff as a 50% owner of the company. (Exh. 22 - Icarian 2010 Tax Return; Exh. 23 - Maria's 2011 Schedule K-1 for Icarian; Exh. 24 - Dr. Poulos' Schedule K-1 for Icarian; Exh. 32 - Icarian 2011 Tax Return.)

5. Defendant MEEJ, LLC ("MEEJ") was formed on September 2, 2004, as a manager-managed North Carolina LLC. (Exh. 2 - MEEJ Operating Agreement.) Dr. Poulos was originally the 100% interest owner in MEEJ, but later transferred

---

[2] All Exhibit references are to the exhibits filed by Plaintiff in opposition to the Motions unless otherwise noted.

parts of his interest to Plaintiff, Elizabeth, and Emanuel. At the times relevant to this matter MEEJ's ownership was as follows: Plaintiff - 57%; Dr. Poulos - 37%; Elizabeth Poulos - 3%; and, Emanuel Poulos - 3%. (Exh. 3 - Assignments of Interest in MEEJ.) At all times, Dr. Poulos was the sole manager of MEEJ.

6. Defendant JEP Investments, LLC ("JEP") was formed on July 10, 2008, as a member-managed North Carolina LLC. Dr. Poulos and Plaintiff each held a 50% interest in JEP (Exh. 8 - JEP Operating Agreement, Schedule 1.) On December 9, 2008, JEP became a manager-managed LLC with Dr. Poulos serving as its sole manager. (Exh. 10 - Amendment to JEP Articles of Organization.)

7. During 2010 and 2011, Plaintiff and Dr. Poulos experienced serious marital problems. (Compl. ¶ 22.) It is undisputed that on January 19, 2011, Dr. Poulos paid attorney Renny Deese ("Deese") $100 for a consultation. (Exh. 13 - Credit Card Statement.) Deese practices "family law," and does not do tax or estate planning work. (Exh. 46 - Dep. of R. Deese pp. 5-6.) While the Court held that the substance of their communication was protected by attorney-client privilege (Order on Mot. to Compel ¶ 4.), Dr. Poulos admitted in his deposition that he did not discuss estate planning with Deese during the consultation. (Exh. 47 - Dep. of J. Poulos p. 52.)

8. On January 28, 2011, Dr. Poulos and Plaintiff executed a General Warranty Deed and two Deeds of Gift transferring property from MEEJ to Icarian (the "MEEJ Transfers") (Exhs. 15 - Deed-MEEJ to Icarian, 16 - Deed-MEEJ to Icarian (3 tracts), and 17 - Deed-MEEJ to Icarian (Laurel Fork).) Both Dr. Poulos and Plaintiff signed each of the deeds. (*Id.*)

9. On January 28, 2011, Dr. Poulos and Plaintiff executed a Deed of Gift transferring five parcels of real property from JEP to Icarian (the "JEP Transfer"). (Exh 14 - Deed-JEP to Icarian.) Both Dr. Poulos and Plaintiff signed the Deed of Gift. (*Id.*)

10. On February 11, 2011, Dr. Poulos formed the Family Trust as an irrevocable trust. The Family Trust named Murray as its trustee, and Elizabeth and Emanuel as its beneficiaries. (Exh. 19 - John E. Poulos Family Trust.) Plaintiff was not required to sign any of the documents related to the creation of the Family Trust, and she claims she did not know of the existence of the trust until she conducted discovery in this lawsuit. (Exh. 50 - Maria Poulos Aff. ¶ 50.) Plaintiff does not allege Dr. Poulos made any representations to her regarding the creation of the Family Trust.

11. On February 11, 2011, after forming the Family Trust, Dr. Poulos transferred 90% of the membership interest in Icarian to the Family Trust (the "Trust Transfer"). (Exh. 20 - Transfer into Family Trust.) Plaintiff did not sign any documents related to the Trust Transfer. Plaintiff claims she did not know about the Trust Transfer or what assets the Family Trust held until she conducted discovery in this lawsuit. (Exh. 50 - Maria Poulos Aff. ¶ 50.) Plaintiff does not allege Dr. Poulos made any representations to her regarding the creation of the Trust Transfer.

12. On February 11, 2011, Dr. Poulos also transferred a 5% interest in Icarian to Plaintiff (the "Maria Transfer"), and retained the remaining 5% interest in

Icarian for himself. (Exh. 21 - 5% Transfer to Maria.) Plaintiff signed the "Assignment of LLC Membership Interest" making the Maria Transfer. (*Id.*)

13. In March 2012, Dr. Poulos transferred membership interests he held in two other LLCs to Icarian,[3] and on March 29, 2012, he amended Icarian's Articles of Organization, changing it from a member-managed to a manager-managed LLC. On April 12, 2012, he amended Icarian's Operating Agreement, naming himself its sole manager. (Exh. 29 - Amended Icarian Operating Agreement.)

14. Plaintiff alleges that Dr. Poulos procured her signatures on the documents making the MEEJ, JEP, and Maria Transfers by fraud. (Exh. 50 - Maria Poulos Aff. ¶¶ 10–28; Compl. ¶ 65.) Plaintiff claims that Dr. Poulos presented her with only the signature pages of the transfer documents, never asked her to read the documents, and never described the documents she was signing. (Compl. ¶¶ 11, 14–16.) Plaintiff usually did not ask Dr. Poulos about the documents because she "trusted him." (*Id.* ¶ 17.) On the occasions when Plaintiff asked Dr. Poulos about the documents, he responded that the documents were "so we don't get sued" or "for our retirement." (*Id.* ¶ 18.) On other occasions, Dr. Poulos volunteered that the documents were "so we don't get sued" or "for our retirement." (*Id.* ¶ 19.) Dr. Poulos never explained to Plaintiff what he meant by "so we don't get sued" or "for our retirement." (*Id.* ¶¶ 23–24.) Nevertheless, Plaintiff claims that she relied on Dr.

---

[3] On March 10, 2012, Dr. Poulos transferred a 50% interest in AJ Properties of Fayetteville, LLC to Icarian ("AJ Transfer"), and on March 16, 2012, Dr. Poulos transferred a 33.3% interest in Bear Plus One, LLC to Icarian ("Bear Plus Transfer").

Poulos' representations and believed that he was acting in her "best interests." (*Id.* ¶¶ 25–28.)

15.    Dr. Poulos' testimony regarding the purposes behind the asset transfers and what, if anything, he told Plaintiff about the transfers is somewhat vague. In his testimony, Dr. Poulos claimed his goals were to establish a long-term vehicle to hold assets for their children, to protect those assets from both creditors and potential malpractice liability, and to avoid negative tax consequences from a potential change to estate tax laws. (Exh. 47 - Dep. of J. Poulos pp. 7, 14, 44, 53.) Dr. Poulos claimed that he discussed the purposes for the transfers into Icarian with Plaintiff. (*Id.* pp. 44, 53, 99–111.) Dr. Poulos testified that he told Plaintiff the following:

> We need to make sure that our assets are protected, that we're protected from any type of liability from malpractice or any creditors in case something goes wrong in one of these LLCs, and we need to make sure our kids are always going to be taken care of, and we need to, you know, make sure there will be no issues with fighting.

(*Id.* p. 44.) Dr. Poulos did not claim that he told Plaintiff the transfers were made for tax purposes. Plaintiff denies that Dr. Poulos told her that any of the documents she signed were for protection of their assets from malpractice lawsuits or were for estate planning purposes. (Exh. 50 - Maria Poulos Aff. ¶¶ 21, 22.)

16.    Dr. Poulos also claimed that he involved Maria in his meetings with Murray, the estate attorney who advised Dr. Poulos regarding the transfers of assets between the LLCs and the creation of the Family Trust. (Exh. 47 - Dep. of J. Poulos pp. 45–46.) Plaintiff denies that Murray ever discussed the Family Trust with her. (Exh. 50 - Maria Poulos Aff. ¶ 49.) Murray denied that he had ever met with Plaintiff

and that Dr. Poulos had included Plaintiff in their meetings. (Exh. 44 - Dep. of O. Murray pp. 47–48.)

17. Plaintiff alleges that the properties and other assets transferred in the JEP, MEEJ, Icarian, and Trust Transfers were marital property that would have been subject to equitable distribution in the divorce proceedings. (Compl. ¶ 57.) Plaintiff claims "the Trust now owns substantial assets that I once owned or had a marital interest in." (Exh. 50 - Maria Poulos Aff. ¶ 41.) Plaintiff alleges that Dr. Poulos transferred property as part of a scheme "to avoid equitable distribution of at least half of these properties to [her]." (Compl. ¶ 58.)

18. On June 21, 2013, Plaintiff filed a domestic complaint against Dr. Poulos in the District Court of Cumberland County (13 CVD 4950) as the dependent spouse and primary caretaker of their two children. On July 12, 2013, Plaintiff and Dr. Poulos physically separated. (Compl. ¶ 19.) On July 15, 2013, Plaintiff filed a second domestic complaint against Dr. Poulos in Cumberland County (13 CVD 5523) as the dependent spouse seeking post-separation support, alimony, and equitable distribution of marital assets (both domestic cases will collectively be referred to as the "domestic proceeding"). (Compl. ¶¶ 18–20.)

19. On February 11, 2015, Plaintiff initiated this action in Cumberland County Superior Court, alleging that Dr. Poulos, in late 2010 and early 2011, fraudulently transferred marital assets to defraud Maria from receiving her fair share of marital and divisible property in the planned separation and divorce (the "Fraudulent Scheme"). (Compl. ¶ 23.) In the Complaint, Plaintiff makes claims for

Fraud ("Count I"), Constructive Fraud/ Breach of Fiduciary Duty ("Count II"), and Fraudulent Transfers ("Count III"). Additionally, Plaintiff seeks to set aside the Family Trust ("Count IV") and requests an Accounting ("Count V").

20. On March 20, 2015, Poulos Defendants filed a motion to dismiss and motion to strike and, on June 2, 2015, the Court issued an Order and Opinion granting in part and denying in part those motions. The Court's Order did not dismiss any of the claims currently at issue.

21. On February 15, 2016, Murray, as trustee of the Family Trust, filed the Murray Motion. Murray and the Trust sought summary judgment as to Counts III, IV, and V, apparently believing that the claims for fraud, breach of fiduciary duty, and constructive fraud were not alleged against them. At the hearing, however, Plaintiff's counsel informed the Court that it was taking a voluntary dismissal of its claims against Murray and the Family Trust because Plaintiff believed the Court of Appeals' holding in *Ward v. Fogel*, 237 N.C. App. 570, 580–81, 768 S.E.2d 292, 300–01 (2014), precluded her claims because Plaintiff had not been involved in "a distinct agreement or transaction" with Murray or the Family Trust. Although Plaintiff's counsel did not expressly so state, Plaintiff's contention implies that Plaintiff intended to bring the fraud, breach of fiduciary duty, and constructive fraud claims against Murray and the Family Trust. Plaintiff's counsel did request that Murray and the Family Trust be retained as nominal parties in this action to the extent necessary to carry out any order the Court may enter. Therefore, Plaintiff's claims in this action against Murray and the Family Trust should be DISMISSED without

prejudice. Murray and the Family Trust will remain nominal defendants in this action to the extent they are necessary parties to carrying out any relief ordered by the Court.

22. On February 29, 2016, Poulos Defendants filed a Motion for Summary Judgment seeking summary judgment as to all of Plaintiff's claims. The Poulos Defendants' Motion has been fully briefed and argued, and is ripe for determination.

III. ANALYSIS

23. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as matter of law." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). An issue is "material" if its "resolution . . . is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972). The moving party bears "the burden of clearly establishing lack of a triable issue" to the trial court and may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Variety Wholesalers, Inc.*, 365 N.C. at 523, 723 S.E.2d at 747. All evidence is viewed in the light most favorable to the nonmoving party and with the benefit of all reasonable inferences. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

### a. Breach of Fiduciary Duty.

24. Plaintiff's second claim is for breach of fiduciary duty and constructive fraud (Count II). Plaintiff alleges that "as [Plaintiff]'s husband, Dr. Poulos, owed a fiduciary duty to [Plaintiff] to manage and dispose of the marital property in her best interests" and "took advantage of" Plaintiff's trust and confidence in him to "benefit himself." (Compl. ¶¶ 86, 88–89. [4]) Plaintiff contends that Dr. Poulos' misrepresentations and omissions regarding the reasons he was making the transfers of the couple's assets breached the fiduciary duty Dr. Poulos owed Plaintiff. Dr. Poulos concedes that he owed Plaintiff a fiduciary duty as her husband at the time the transfers were made. (Poulos Defs.' Br. Supp. Summ. J. 9.) Nevertheless, he argues that he did not breach his fiduciary duty because he explained the reasons for the transfers to Plaintiff and did not make any misrepresentations to Plaintiff. Dr. Poulos further contends that the undisputed evidence establishes that he did not personally benefit from the transfers since, like Plaintiff, he was left with a 5% interest in Icarian, and he too cannot reach the assets in the Family Trust.

25. To establish a breach of fiduciary duty, one must show (1) the existence of a fiduciary duty, and (2) that the fiduciary failed to "act in good faith and with due regard to plaintiff's interests." *White v. Consolidated Planning Inc.,* 166 N.C. App.

---

[4] Plaintiff also alleged that Dr. Poulos owed her a fiduciary duty as a member of Icarian, MEEJ and JEP. (Compl. ¶ 87.) Plaintiff, however, made no argument in her brief in support of a claim of fiduciary duty arising from her membership in the LLCs. Since Dr. Poulos has conceded he owed Plaintiff a fiduciary duty as her husband, the Court need not address Plaintiff's claim for breach of fiduciary duty arising from Plaintiff's membership in the LLCs.

283, 293, 603 S.E.2d 147, 155 (2004).[5] A fiduciary relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Harrold v. Dowd*, 149 N.C. App. 777, 784, 561 S.E.2d 914, 919 (2002).

26. It is well-settled in North Carolina that the spousal relationship is the most confidential of all relationships and is a fiduciary one. *Eubanks v. Eubanks,* 273 N.C. 189, 195–96, 159 S.E.2d 562, 567 (1968) ("[T]he relationship between husband and wife is the most confidential of all relationships, and transactions between them, to be valid, must be fair and reasonable."). Nevertheless, "our Courts have found that a spouse only breaches a fiduciary duty owed to the other spouse within the context of *a distinct agreement or transaction* between the spouses." *Ward v. Fogel*, 237 N.C. App. at 580, 768 S.E.2d at 300 (*citing Smith v. Smith*, 113 N.C. App. 410, 413, 438 S.E.2d 457, 459 (1994) (emphasis added). In addition, where a transferee of property stands in a confidential or fiduciary relationship to the transferor, it is not only the duty of the transferee to exercise the utmost good faith in the transaction, but also to disclose to the transferor all material facts relating thereto. *Vail v. Vail*, 233 N.C.

---

[5] A claim for breach of fiduciary duty also requires proof of an injury or harm proximately caused by the breach of duty. *BDM Investments v. Lenhil, Inc.*, 2014 NCBC LEXIS 6, **29-30 (2014) (citing *Jay Grp., Ltd. v. Glasgow*, 139 N.C. App. 595, 600-01, 534 S.E.2d 233, 237 (2000)); *See also Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) ("The first issue before us is whether there was sufficient evidence, as a matter of law, that Corinna breached a fiduciary duty owed to plaintiffs, proximately causing injury to them."). Defendant has not argued that Plaintiff failed to present evidence of an alleged injury. Nevertheless, the Court concludes that Plaintiff has presented sufficient evidence to raise an issue of material fact regarding whether she was injured by Dr. Poulos' actions.

109, 114, 63 S.E.2d 202, 206 (1951) ("[I]t is the duty of a person in whom confidence is reposed by virtue of the situation of trust arising out of a confidential or fiduciary relationship to make a full disclosure of any and all material facts within his knowledge relating to a contemplated transaction with the other party to such relationship, and any concealment or failure to disclose such facts is a fraud.").

27.     Dr. Poulos had a fiduciary duty to Plaintiff as her husband at the time of the MEEJ and JEP Transfers, and had a duty to disclose to Plaintiff all material facts regarding those transactions. Plaintiff's evidence is that Dr. Poulos induced her to sign the documents transferring her interests in MEEJ and JEP to Icarian, of which Dr. Poulos was the 100% owner, by telling her only that the documents were "so we don't get sued" and "for our retirement." Dr. Poulos did not provide the documents to Plaintiff nor permit her to review the documents. Dr. Poulos argues that, even accepting Plaintiff's evidence, the explanation that the transfers were being made "so we don't get sued" and "for our retirement" were not material misrepresentations or omissions that would constitute a breach of his fiduciary duty. The Court disagrees. The transfers of real property from one LLC to another obviously would not prevent Plaintiff or Dr. Poulos from being sued. Nor did the transfers accomplish any discernible retirement objective. Although the statements "so we don't get sued" and "for our retirement" may be vaguely suggestive of Dr. Poulos' alleged purposes in making the transfers, they do not, on their face, adequately describe the so-called asset protection and estate planning goals Dr. Poulos claims he sought to accomplish. The Court concludes that issues of material

fact exist as to whether Dr. Poulos breached his fiduciary duty to Plaintiff by misrepresenting or failing to disclose the purposes of the MEEJ and JEP Transfers and, accordingly, the Poulos Defendants' Motion addressing Plaintiff's claim for breach of fiduciary duty regarding the MEEJ and JEP Transfers should be DENIED.

28. Plaintiff's claim for breach of fiduciary duty as it applies to the Trust Transfer raises a separate question, however, because those were discreet actions by Dr. Poulos that did not involve agreements or transactions between Plaintiff and Dr. Poulos. *See Ward*, 237 N.C. App. at 580, 768 S.E.2d at 300 (claim for breach of fiduciary duty must "arise within the context of a distinct agreement or transaction between the spouses" (citation omitted)). Plaintiff presented evidence Dr. Poulos created the Trust and made the Trust Transfer without Plaintiff's participation or knowledge. Neither involved an agreement between Dr. Poulos and Plaintiff. Plaintiff does not claim that Dr. Poulos made any misrepresentations to her specifically about the Trust Transfer or purpose of the Trust Transfer. Plaintiff admitted that she did not even know of the existence of the Family Trust or that it held the interest in Icarian until she learned of it during this lawsuit.

29. The Court concludes that the record evidence, viewed in the light most favorable to Plaintiff, establishes that Plaintiff was not a party to the agreements or transactions creating the Family Trust or the Trust Transfer. Accordingly, "[b]ecause plaintiff's claims regarding the [Family] trust do not arise 'within the context of a distinct agreement or transaction between the spouses,' there was no fiduciary duty owed to plaintiff sufficient to survive summary judgment . . . ." *Id.* at 580–81, 768

S.E.2d at 300 (citation omitted). Poulos Defendants' Motion addressing Plaintiff's claim for breach of fiduciary duty regarding the creation of the Family Trust and the Trust Transfer should be GRANTED.

   *b. Constructive Fraud*

  30. "To assert a claim of constructive fraud, plaintiff must allege: '(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured . . . .'" *Ellison v. Alexander*, 207 N.C. App. 401, 408, 700 S.E.2d 102, 108 (2010) (citations omitted). Our Supreme Court has held:

> Constructive fraud differs from actual fraud in that "it is based on a confidential relationship rather than a specific misrepresentation." Implicit in the requirement that a defendant "[take] advantage of his position of trust to the hurt of plaintiff," is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself.

*Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (citing *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678–79 (1981)). Like a breach of fiduciary duty, a constructive fraud based on a spousal relationship must occur within the context of a transaction or agreement between the spouses. *Ward*, 237 N.C. App. at 580, 768 S.E.2d at 300.

  31. Since the parties were in a fiduciary relationship, Plaintiff must show that Dr. Poulos sought to benefit himself from his alleged breach of fiduciary duty. Plaintiff contends that Dr. Poulos benefitted himself at Plaintiff's expense by: (a) the "intangible benefit of satisfaction or pleasure" from preventing Plaintiff access to the transferred property in a potential divorce; (b) the "benefit of power and authority"

from "retaining . . . control over the [Family] Trust"; (c) receiving "asset protection from malpractice liability and avoiding the estate tax exemption"; (d) payment of the $100 professional fee to Renny Deese through an Icarian credit card; and, (e) being able to make loans to Icarian for which he received as security the potential to obtain 50% ownership in the properties owned by Icarian in the event of default on the loans. (Pl.'s Br. Opp. Mot. Summ. J. 19–20.)

32.     Plaintiff correctly asserts that "[a] presumption of fraud arises where the fiduciary in a confidential relationship benefits in any way from the relationship." *Lancaster v. Lancaster*, 138 N.C. App. 459, 462, 530 S.E.2d 82, 84 (2000) (holding that husband and wife had physically separated and, therefore, husband did not owe wife a fiduciary duty at the time they entered into separation and property settlement agreement; accordingly, court did not address issue of whether husband received a "benefit" from breach of duty). North Carolina's appellate decisions addressing the issue, however, have held that a defendant sought to benefit himself only when he benefitted himself in some tangible manner, and have not expressly recognized an intangible benefit as sufficient to sustain a claim for constructive fraud. *Compare Link v. Link*, 278 N.C. 181, 193, 179 S.E.2d 697, 704 (1971) (defendant husband took advantage of relationship with wife to obtain shares of stock as part of a separation agreement); *Terry*, 302 N.C. at 84, 273 S.E.2d at 678 (defendant used position of trust and confidence to take advantage of his ill brother and purchase his business at a price below market value); *Vail*, 233 N.C. at 115, 63 S.E.2d at 207 (defendant son benefitted when he took advantage of relationship of trust to obtain deed to property

from his mother); *with Barger,* 346 N.C. at 666, 488 S.E.2d at 224 (holding that the "benefit" of continued business relations between the plaintiff and the defendant is insufficient to maintain a claim of constructive fraud). Accordingly, the Court concludes that any "satisfaction" Dr. Poulos derived in preventing Plaintiff from reaching the property in the Family Trust during the divorce proceeding is not sufficient to support a claim for constructive fraud since "satisfaction" is a state of mind with no discernable tangible value. Similarly, the Court concludes that any alleged benefit of holding "power and authority" over the Family Trust (apparently through his position as manager of Icarian (Pl.'s Br. Opp. Summ. J. 4)) is not the type of tangible benefit that would support a claim for constructive fraud. In addition, Plaintiff concedes that Dr. Poulos did not gain management authority of Icarian through his alleged misrepresentations, but "has always managed Icarian." (*Id.* 4–5.)

33.     With regard to the alleged asset protection and tax benefits[6] that may have flowed to Dr. Poulos, Plaintiff does not dispute that she would have enjoyed the same benefits. (*Id.* 19.) Those benefits do not support her constructive fraud claim because they were not gained by Dr. Poulos specifically *at her expense. Barger,* 346 N.C. at 666, 488 S.E.2d at 224.

34.     It is undisputed that on January 19, 2011, Dr. Poulos used an Icarian credit card to pay the $100 fee for consulting with attorney Renny Deese (Exh. 47 - Dep. of J. Poulos pp. 166–67; Exh. 13 - Credit Card Statement.) Plaintiff argues that

---

[6] There is no evidence in the record that either Dr. Poulos or Plaintiff received any tax benefits from the transactions. To the extent Dr. Poulos believed that there was going to be a change to the estate tax laws that might make the couple's estate taxable upon their deaths, it is undisputed that the change to the law never occurred.

the payment of this fee constitutes a benefit in the form of "payment of personal expenses through the [Family] [T]rust funds." (Pl.'s Br. Opp. Summ. J. 19.) This payment, however, occurred nine days **before** Dr. Poulos made the first of the allegedly fraudulent MEEJ and JEP Transfers, and over three weeks **before** Dr. Poulos created the Family Trust. In other words, the payment was not made out of Family Trust funds, and any benefit Dr. Poulos received by payment of the fee by Icarian could not have resulted from his alleged misrepresentations and omissions surrounding the transfers.

35. Plaintiff also contends that Dr. Poulos benefitted from three loans he made to Icarian between August 2013, and March 2014. (Exh. 37 - Promissory Note (Bridges); Exh. 39 - Promissory Note (Smith St.); Exh. 40 - Promissory Note (Wyrd St.).) Dr. Poulos loaned Icarian a total of approximately $173,000. The loans were interest-free, and repayable upon the sale of specific pieces of real property (apparently owned by Icarian). In each of the promissory notes, Dr. Poulos took as security a 50% ownership interest in the piece of real property in the event of a default. (*Id.*) There is no evidence that Icarian defaulted on any of the loans resulting in Dr. Poulos receiving an ownership interest in the properties. More significantly, Plaintiff has not explained how the loans benefitted Dr. Poulos,[7] or how such benefit accrued to Dr. Poulos as a result of him taking advantage of his fiduciary relationship with Plaintiff.

---

[7] In fact, the loans appear to be for the benefit of Icarian, an entity in which Plaintiff and Dr. Poulos both have identical 5% ownership interests.

36.     Plaintiff has failed to present evidence that creates an issue of material fact as to whether Dr. Poulos benefited himself at Plaintiff's expense, the Poulos Defendants' Motion regarding Plaintiff's claim for constructive fraud should be GRANTED.[8]

### c. *Fraud*

37.     In Count I of the Complaint, Plaintiff alleges that "Dr. Poulos fraudulently omitted and failed to disclose" that the purpose of the Icarian Transfer, the Maria Transfer, and the Trust Transfer was to "deprive [Plaintiff] of distribution of marital property in the support case." (Compl. ¶ 78.) Plaintiff alleges that to the extent she signed certain documents that made the transfers, Dr. Poulos obtained her signature by the same misrepresentations and omission underlying her claims for breach of fiduciary duty. (*Id.* ¶ 79.)

38.     While "[f]raud has no all-embracing definition. . . . [I]n general terms fraud may be said to embrace 'all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the taking of undue or unconscientious advantage of another.'" *Vail*, 233 N.C. at 113, 63 S.E.2d at 205 (citation omitted). Nevertheless, "the following essential elements of actual fraud are well-established: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in

---

[8] Plaintiff's claim for constructive fraud arising from the creation of the Family Trust and the Trust Transfer are also subject to dismissal because they did not involve an agreement or transaction between Plaintiff and Dr. Poulos. *Ward*, 237 N.C. App. at 580-81, 768 S.E.2d at 300. Poulos Defendants' Motion regarding those claims should be GRANTED for this reason as well.

fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Although reasonable reliance on an allegedly false representation usually is necessary to show fraud, it is not necessary where the existence of a confidential or fiduciary relationship creates a duty to disclose between the parties to the transaction. *Vail*, 233 N.C. at 116, 63 S.E.2d at 207. "It is a well-settled principle of the law of fraud . . . that it is the duty of a person in whom confidence is reposed by virtue of the situation of trust arising out of a confidential or fiduciary relationship to make a full disclosure of any and all material facts within his knowledge relating to a contemplated transaction with the other party to such relationship, and any concealment or failure to disclose such facts is a fraud." *Id.* at 114, 63 S.E.2d at 206 (internal quotation marks omitted). In addition, where a fiduciary relationship exists, a deceived party is not required to exercise due diligence in discovering the fraud. *Id.* at 116, 63 S.E.2d at 207.

39. As a preliminary matter, for the same reasons that Plaintiff's claims for breach of fiduciary duty and constructive fraud regarding the creation of the Family Trust and the Trust Transfer must be dismissed, so too must her claim for fraud based on those actions. The creation of the Family Trust and the Trust Transfer did not involve an agreement or transaction between Plaintiff and Dr. Poulos. *Ward*, 237 N.C. App. at 580, 768 S.E.2d at 300 (the plaintiff "was not induced into agreeing to [the trust's] terms" and her "claim for fraudulent inducement" regarding creation of the trust failed).

40.     Dr. Poulos argues that Plaintiff's fraud claims cannot succeed because she has not presented evidence that would create a genuine issue of fact about his alleged intent in making the MEEJ and JEP Transfers as part of his overall purpose of protecting the couple's assets and passing the assets to their children. Our appellate courts have recognized, however, that:

> [S]ummary judgment is generally inappropriate in an action for fraud. The existence of fraud necessarily involves a question concerning the existence of fraudulent intent, and the intent of a party is a state of mind generally within the exclusive knowledge of the party. That state of mind must, by necessity, be proved by circumstantial evidence.

*Lewis v. Blackman*, 116 N.C. App. 414, 419, 448 S.E.2d 133, 136 (1994) (citations omitted). Whether allegedly fraudulent representations or concealments were calculated or intended to deceive are questions of fact generally left to the jury if the circumstances *could demonstrate* fraudulent intent. *Latta v. Rainey*, 202 N.C. App. 587, 599, 689 S.E.2d 898, 909 (2010) (emphasis added). Viewed in the light most favorable to Plaintiff, she has presented evidence that Dr. Poulos misrepresented or failed to disclose the purpose behind the MEEJ and JEP Transfers, and did not inform her that he had created the Family Trust or made the Trust Transfer. Dr. Poulos took these actions almost immediately after the couple began marriage counseling in early 2011, and after he had consulted with a family law attorney. Dr. Poulos claims to have involved Plaintiff in his meeting with Murray to create the Family Trust, but Murray denies Dr. Poulos involved the Plaintiff. The Court believes a reasonable juror could conclude that Dr. Poulos made the transfers into Icarian, an entity in

which he claimed 100% ownership and was the only manager, in order to be able to transfer the couple's assets into the Family Trust without having to involve Plaintiff.

41. The Court concludes that genuine issues of material fact exist as to Dr. Poulos' intent in making the MEEJ and JEP Transfers that foreclose finding as a matter of law that he did not have a fraudulent intent. Therefore, Poulos Defendants' Motions addressing Plaintiff's fraud claims regarding the MEEJ and JEP Transfers are DENIED.

### d. *Violation of Uniform Voidable Transactions Act*

42. In Count III of her Complaint, Plaintiff alleges that Dr. Poulos' transfers of property were in violation of the Uniform Fraudulent Transfer Act, G.S. § 39-23.1, *et seq.* (in 2014, the UFTA became the Uniform Voidable Transactions Act ("UVTA")). More particularly, Plaintiff alleges that Dr. Poulos made the MEEJ, JEP, Maria, and Trust Transfers "with an intent to hinder, delay and defraud [Plaintiff] from obtaining her interest in marital property", and without receiving "reasonably equivalent value" from the Family Trust. (Compl. ¶¶ 92, 98.) Plaintiff contends the transfers are voidable pursuant to G.S. §§ 39-23.5(a) and 39-23.4. (*Id.* ¶¶ 102, 103.)

43. To proceed with a cause of action under the UVTA, Plaintiff must have standing as a creditor. *See Maloney v. Alliance Dev. Group, LLC*, 2006 NCBC LEXIS 14, at \*14–15 (N.C. Super. Ct. 2006) (citing G.S. §§ 39-23.4 (a), 39-23.5(a), 39-23.7(a)). To have standing as a creditor, one must have a "claim," defined as a "right to payment." G.S. § 39.23.1(3)–(4). A "right to payment," can be unliquidated, contingent, unmatured, or disputed, and need not be reduced to a judgment. G.S. §

39-23.1(3). "Transfers" under the UVTA are defined as "every mode . . . of disposing of or parting with property belonging to the debtor." G.S. § 39-23.1(12).

44.     G.S. § 39-23.5(a)[9] protects creditors "whose claim arose before the transfer was made or obligation was incurred." To establish a claim, a creditor must establish that the debtor made a transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation," **and** that the debtor was insolvent at the time of the transfer or become insolvent[10] as a result of the transfer. G.S. § 39-23.5(a) (emphasis added). Defendant argues that Plaintiff does not qualify as a "present creditor" under the statute because she has alleged that "she became a creditor of Dr. Poulos, as defined by G.S. § 39-23.1, when the support case was filed (July 15, 2013), or, alternatively, at the very earliest when the Poulos Separation occurred (July 12, 2013)." (Compl. ¶ 94.) Since all of the transfers at issue occurred on or before February 11, 2011, Defendant argues that Plaintiff was not a creditor at the time of the transfers. Despite the allegations in the Complaint, however, Plaintiff now contends that she had existing "claims" against Dr. Poulos as of February 11, 2011, based on the allegedly unlawful transfers made on January 28, 2011. (Pl. Br. Opp. Mot. Summ. J. 23.) The Court does not need to address Plaintiff's status as a creditor, however, since she has not presented evidence that Dr. Poulos was insolvent or became insolvent as a result of the transfers. To the contrary, Plaintiff admitted that she did not believe Dr. Poulos had ever been unable to pay his debts. (M. Poulos

---

[9] Plaintiff does not contend that she has a claim under G.S. § 39-23.5(b).
[10] "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets", and "[a] debtor that is generally not paying the debtor's debts as they become due . . . is presumed to be insolvent." G.S. § 39-23.2.

Dep. pp. 60–61, 64.) Plaintiff has not presented any evidence that at any time relevant to this action Dr. Poulos' debts exceeded his assets. Plaintiff has failed to present evidence in support of an essential element of her claim under G.S. § 39-23.5(a). Accordingly, Poulos Defendants' Motion regarding this claim should be GRANTED.

45. Plaintiff also makes a claim under G.S. § 39-23.4(a), which applies to both present and future creditors. The statute provides as follows:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(b) intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

46. Plaintiff contends that the Trust Transfer is voidable under G.S. § 39-23.4(a)(2) because Dr. Poulos transferred the property "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." (Compl. ¶ 98.) Dr. Poulos argues that a settlor does not have to receive any consideration in exchange for a transfer of property to a trust. *Ridge v. Bright*, 244 N.C. 345, 349, 93 S.E.2d 607, 610 (1956). In *Ridge*, the Court held

> It is not an essential feature of the trust creation that the settlor has received a benefit from the trustee, *cestui,* or another . . . . If the settlor has otherwise effectively completed the trust, the fact that he has received nothing in return for the transfer of the equitable or legal and equitable property interest is immaterial.

*Id.,* 93 S.E.2d at 611. Since consideration was not necessary to effectuate the Trust Transfer, Plaintiff's claim under G.S. § 39-23.4(a)(2) fails.

47. With regard to Plaintiff's claim under G.S. § 39-23.4(a)(1) ("Transfer or obligation voidable as to present or future creditors"), Poulos Defendants do not deny that Plaintiff is a future creditor. (Murray Br. Supp. Summ. J. 9).[11] Nevertheless, they contend Plaintiff cannot succeed on this claim because G.S. § 39-23.4(a)(1) only allows future creditors to attack a fraudulent transfer when the transfer was intended to hinder, delay, or defraud a then-existing creditor at the time of transfer. (Murray Br. Supp. Summ. J. 9–11.) In support of this argument, Poulos Defendants cite *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 506 S.E.2d 267 (1998), a case decided under the common law in effect prior to passage of the UFTA. In *Norman Owen Trucking*, the Court of Appeals cited "the applicable fraudulent conveyance principles" under North Carolina common law, including the following:

> If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors; but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution, which is unpaid, and when this is established and the conveyance avoided, subsequent creditors are let in and the property is subjected to the payment of creditors generally.

---

[11] Dr. Poulos specifically incorporates Murray's brief in support of summary judgment as to the Fraudulent Transfer (Count III), Setting Aside the Trust (Count IV), and Accounting (Count V) claims. (Poulos Defs.' Br. Supp. Summ. J. 11.)

*Id.* at 173, 506 S.E.2d at 271 (citing *Aman v. Waller*, 165 N.C. 224, 227, 81 S.E. 162, 164 (1914)). Poulos Defendants contend that G.S. § 39-23.4(a)(1) must be interpreted as consistent with this principle and "therefore operates to allow a future creditor to attack a fraudulent transfer that occurred prior to the future creditor's standing as a creditor, but only if the transfer was intended to hinder, delay, or defraud a *then-existing creditor at the time of the transfer.*" (Murray Br. Supp. Summ. J. 10 (emphasis in original).)

48.     The Court is not persuaded by Poulos Defendants' argument. First, the principle cited in *Norman Owen Trucking* applies to transfers by the debtor that leaves the debtor with insufficient assets to pay "his debts then existing." 131 N.C. App. at 173, 506 S.E.2d at 271. A claim under § 39-23.4(a)(1), unlike subsection (a)(2), does not require that the transfer make the debtor insolvent or potentially insolvent. Rather, it is sufficient if the creditor challenging the transaction shows that the transfer was intended to "hinder, delay, or defraud any creditor." The Official Comments to the UVTA make this conclusion clear, providing that "there is no requirement in § 4(a)(1) that the intent referred to be directed at a creditor existing or identified at the time of the transfer" and "[d]iminution of the assets available to the debtor's creditors is not necessarily required to 'hinder, delay, or defraud' creditors." The Court rejects Dr. Poulos' argument that G.S. § 39-23.4(a)(1) implicitly requires a then-existing creditor at the time of fraudulent transfer for a future creditor to void the transaction.

49.     For Plaintiff's UVTA claim to survive summary judgment she also must present evidence that creates an issue of fact as to whether Dr. Poulos intended to "hinder, delay, or defraud" her through the property transfers. "[I]ntent is an operation of the mind, it should be proven and found as fact, and is rarely to be inferred as a matter of law." *Estate of Hurst v. Jones*, 230 N.C. App. 162, 170, 750 S.E.2d 14, 20 (2013) (citation omitted). Because intent is difficult to prove, G.S. § 39-23.4(b) provides a non-exhaustive list of factors to be considered in determining intent. *Hurst*, 230 N.C. App. at 170, 750 S.E.2d at 20. Such factors include: the debtor retained possession or control of the property transferred after the transfer; the transfer or obligation was disclosed or concealed; the transfer was substantially all the debtor's assets; the debtor absconded; the debtor removed or concealed assets; the transfer occurred shortly before or shortly after a substantial debt was incurred; and, the debtor transferred the assets in the course of legitimate estate or tax planning. G.S. § 39-23.4(b).

50.     Plaintiff has presented evidence that Dr. Poulos failed to disclose and concealed from her the creation of the Family Trust and the Trust Transfer, that the assets transferred were substantially all of the couple's marital assets, and that after the Trust Transfer, Dr. Poulos appointed himself sole manager of Icarian, retaining control over properties that were allegedly once part of their marital estate. Dr. Poulos counters that the property transfers were effectuated in the course of legitimate estate and tax planning and that Plaintiff filed for divorce not "shortly after" the transfers, but over two years after Dr. Poulos executed the Trust Transfer.

The Court concludes that there is sufficient, albeit circumstantial, evidence to create a genuine issue regarding Dr. Poulos' intent and for Plaintiff's G.S § 39-23.4(a)(1) claim to survive summary judgment. Therefore, the Poulos Defendants' Motion regarding Plaintiff's UVTA claim should be DENIED.

### e. *Setting Aside the Family Trust and Accounting.*

51. In Count IV of the Complaint, Plaintiff seeks an order setting aside the Family Trust under the North Carolina Uniform Trust Code ("UTC"), G.S. §§ 36C-1-101 *et seq.*, on the grounds of fraud. The UTC provides that a trust "is voidable to the extent that its creation was induced by fraud, duress, or undue influence." G.S. § 36C-4-406.

52. Here, the Court already has determined that Poulos Defendants' Motion as to Plaintiff's claim for fraud arising from the creation of the Family Trust and the Trust Transfer must be dismissed. Therefore, the Poulos Defendants' Motion as to Count IV should be GRANTED.[12]

53. In her claim for an accounting, Plaintiff requests a "complete and accurate accounting by Dr. Poulos, the LLCs, and the [Family] Trust of all properties owned, acquired, or transferred by Dr. Poulos, the LLCs, and the Trust." (Compl. ¶ 113.) The Court interprets this request as seeking an accounting of the real property and other assets transferred into Icarian for purposes of determining the amount to which Plaintiff may be entitled if she prevails on her claims, and not as seeking to

---

[12] To the extent Plaintiff requests that a constructive trust be placed on the assets that may be determined to have been improperly transferred in the MEEJ and JEP Transfers (Comp. ¶¶ 118–19) the Court does not believe such request is the subject of the Poulos Defendants' Motion, and the Court declines to address dismissal of such request.

have an accounting of the Family Trust itself. Accordingly, to the extent Poulos Defendants seek summary judgment regarding Plaintiff's claim for an accounting of the real property and other assets transferred into Icarian, the motion should be DENIED.

THEREFORE, it is ordered that:

54. Poulos Defendants' Motion as to Plaintiff's claims for breach of fiduciary duty and fraud arising from the MEEJ and JEP Transfers are DENIED.[13] Poulos Defendants' Motion as to Plaintiff's claim for breach of fiduciary duty and fraud arising from the creation of the Family Trust and Trust Transfer are GRANTED.

55. Poulos Defendants' Motion as to Plaintiff's claim for constructive fraud is GRANTED.

56. Poulos Defendants' Motion as to Plaintiff's request to set aside the Family Trust is GRANTED.

57. Poulos Defendants' Motion as to Plaintiff's request for an accounting of the real property and other assets transferred into Icarian is DENIED.

This the 26th day of September, 2016.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
For Complex Business Cases

---

[13] To the extent Plaintiff has attempted to raise claims for breach of fiduciary duty, constructive fraud, or fraud arising from the AJ and Bear Plus Transfers, the record evidence establishes that neither of those transfers involved an agreement or transaction between Plaintiff and Dr. Poulos. (Exhs. 24–26, 33–35.) Poulos Defendants' Motion as to Plaintiff's claims for breach of fiduciary duty, constructive fraud, and fraud arising from the AJ and Bear Plus Transfers is GRANTED.